# United States Court of Appeals
## For the First Circuit

---

No. 22-1466

RICHARD J. PELTZ-STEELE,

Plaintiff, Appellant,

v.

UMASS FACULTY FEDERATION, LOCAL 1895 AMERICAN FEDERATION OF
TEACHERS, AFL-CIO; MARTIN MEEHAN, in his official capacity as
the President of the University of Massachusetts; MAURA HEALEY,
in her official capacity as the Attorney General of
Massachusetts; MARJORIE WITTNER, JOAN ACKERSTEIN, and KELLY
STRONG, in their official capacities as members of the
Commonwealth Employment Relations Board,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Barron, Chief Judge,
Selya and Lynch, Circuit Judges.

---

Reilly Stephens, with whom Jeffrey M. Schwab, Liberty Justice
Center, Matthew L. Fabisch, and Fabisch Law were on brief, for
appellant.

Jacob Karabell, with whom Bredhoff & Kaiser PLLC was on brief,
for appellee UMass Faculty Federation.

Timothy J. Casey, Assistant Attorney General, with whom Maura
Healey, Attorney General of Massachusetts, was on brief, for state
appellees.

February 14, 2023

BARRON, **Chief Judge**.  We confront in this appeal the question whether a public employee's rights to freedom of speech and association under the First Amendment to the U.S. Constitution are infringed when a public employer authorizes a union to serve as the exclusive representative in collective bargaining for employees within that employee's designated bargaining unit. Twice before we have held that such First Amendment rights are not infringed in that circumstance.  See Reisman v. Associated Facs. of the Univ. of Me., 939 F.3d 409 (1st Cir. 2019); D'Agostino v. Baker, 812 F.3d 240 (1st Cir. 2016).  We now reach that same conclusion yet again, this time in connection with a suit brought in the United States District Court for the District of Massachusetts by a professor at the University of Massachusetts at Dartmouth ("UMass Dartmouth") School of Law against, among other defendants, the union that represents his bargaining unit.

## I.

### A.

Like most other states, Massachusetts "allows public sector employees in a designated bargaining unit to elect a union by majority vote to serve as their exclusive representative in collective bargaining with their government employer." Branch v. Commonwealth Emp. Rels. Bd., 120 N.E.3d 1163, 1165 (Mass. 2019). This authorization is set forth in Massachusetts General Laws, chapter 150E, section 2, which provides that public "[e]mployees

shall have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing on questions of wages, hours, and other terms and conditions of employment."

Under Section 4 of Chapter 150E, public employers "may recognize an employee organization designated by the majority of the employees in an appropriate bargaining unit as the <u>exclusive representative</u> of all the employees in such unit for the purpose of collective bargaining" (emphasis added). Section 5 provides that a union that is so selected "shall have the right to act for and negotiate agreements covering <u>all employees</u> in the unit" (emphasis added).

The union's right to serve as the exclusive bargaining representative under Chapter 150E is limited to the traditional subjects of collective bargaining -- i.e., "wages, hours, standards or productivity and performance, and any other terms and conditions of employment." <u>Id.</u> § 6; <u>see also</u> <u>City of Worcester</u> v. <u>Lab. Rels. Comm'n</u>, 779 N.E.2d 630, 634 (Mass. 2002) (explaining that the "crucial factor in determining whether a given issue is a mandatory subject of bargaining is whether resolution of the issue at the bargaining table is deemed to conflict with perceived requirements of public policy" (quoting Marc D. Greenbaum, <u>The Scope of Mandatory Bargaining Under Massachusetts Public Sector</u>

- 4 -

Labor Relations Law, 72 Mass. L. Rev. 102, 103 (1987))).  In all such bargaining, moreover, the union must represent "the interests of all . . . employees without discrimination and without regard to employee organization membership."  Mass. Gen. Laws, ch. 150E, § 5.

To that latter end, Chapter 150E expressly provides that employees within the bargaining unit "have the right to refrain from any or all" collective bargaining activities.  Id. § 2. Chapter 150E also bars public employers from interfering with, restraining, or coercing any employee in the exercise of any right granted by Chapter 150E, id. § 10(a)(1); discriminating "in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization," id. § 10(a)(3); and discriminating "on the basis of the employee's membership, nonmembership or agency fee status in the employee organization or its affiliates," id. § 12.

**B.**

In September 2021, Peltz-Steele filed a complaint under 42 U.S.C. § 1983 in the United States District Court for the District of Massachusetts based on the First Amendment against the UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO ("Union"), as well as the president of the UMass system, the attorney general of Massachusetts, and members of the

Commonwealth Employment Relations Board.  The complaint alleges the following facts.

Peltz-Steele is the Chancellor Professor at the UMass Dartmouth School of Law.  His bargaining unit is composed of members of the UMass Dartmouth faculty, and that unit has selected the Union as its exclusive representative for purposes of collective bargaining under Chapter 150E.  The Commonwealth Employment Relations Board has certified the Union as the exclusive bargaining representative for collective bargaining with respect to employees in Peltz-Steele's bargaining unit.  See Mass. Gen. Laws, ch. 150E, § 4.  Peltz-Steele has declined to join the Union and "does not wish to associate with the Union, including having the Union serve as his exclusive bargaining representative."

In the wake of financial losses related to the COVID-19 pandemic, the Union and a coalition of unions representing UMass Dartmouth employees in other bargaining units entered into negotiations in 2020 with the university administration regarding potential staffing and/or salary cuts.  Under UMass Dartmouth's initial proposal, UMass Dartmouth would have either laid off "80+ employees" in the relevant bargaining units or implemented a five percent "across the board cut to employee pay."

The unions -- including the one that served as the exclusive bargaining representative for Peltz-Steele's bargaining unit -- eventually negotiated an agreement that implemented a

progressive pay reduction based on existing salary in exchange for a promise from UMass Dartmouth that no bargaining-unit employees would be terminated until July 1, 2021. That agreement, when combined with a separate "law-school specific" reduction in Peltz-Steele's research funding, resulted in his income being reduced by 12 percent. And, in Peltz-Steele's view, "given the existing salary scale at the law school, all full time faculty [we]re [left] worse off under the Union's plan than under the University's original proposal."

The complaint alleges that the defendants infringed Peltz-Steele's First Amendment rights by compelling his speech and association during the negotiations regarding the 2020 pay cuts, which Peltz-Steele accepts qualify as a traditional subject of collective bargaining. The complaint contends that the defendants infringed those rights by making the Union his exclusive representative in that process pursuant to Chapter 150E, despite his not being a member of the Union. Peltz-Steele does not allege that he has been required to financially support the Union, or that he is otherwise restricted from expressing his opposition to the Union's bargaining positions.[1] As relief, the complaint seeks

---

[1] Peltz-Steele did allege in his complaint that he was barred from individually filing grievances about actions taken by the Union, but he voluntarily dismissed that claim because the parties agree that Massachusetts law already allows him to do so without representation by the Union. That claim is therefore not before us on appeal.

a declaration that "the exclusive representation provided for in [Chapter 150E] is unconstitutional" under the First Amendment as well as an order that enjoins the defendants from enforcing or giving effect to certain of its provisions.

The Union and the other defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). At a brief hearing on May 11, 2022, the District Court granted those motions from the bench, ruling that it was "bound by First Circuit precedent" to reject Peltz-Steele's claim that the exclusive representation provisions of the Massachusetts public sector collective bargaining law compel speech and association in violation of the First Amendment. The District Court thereafter issued a memorandum that explained its reasoning as to why "precedent squarely -- and justifiably -- forecloses a First Amendment challenge to exclusive representation for public-sector unions." Peltz-Steele v. UMass Fac. Fed'n, ___ F. Supp. 3d ___, 2022 WL 3681824, at *1 (D. Mass. Aug. 25, 2022).

This timely appeal followed. Our review is de novo. Pagán-González v. Moreno, 919 F.3d 582, 589 (1st Cir. 2019).

## II.

Peltz-Steele recognizes that the District Court held that it was bound to rule as it did by two of our prior precedents: D'Agostino, 812 F.3d at 244 (holding that "exclusive bargaining representation by a democratically selected union does not,

without more, violate the right of free association on the part of
dissenting non-union members of the bargaining unit"), and
Reisman, 939 F.3d at 412-14 (same). D'Agostino was decided before
the Supreme Court of the United States decided Janus v. American
Federation of State, County, & Municipal Employees, 138 S. Ct.
2448 (2018), which overruled Abood v. Detroit Board of Education,
431 U.S. 209 (1977), and held that the First Amendment prohibits
a union's mandatory assessment of "agency fees" on nonunion members
to compensate the union for costs incurred in collective
bargaining. But, Peltz-Steele recognizes both that Reisman was
decided after Janus and that Reisman expressly stated that Janus
did not provide a basis for departing from our holding in
D'Agostino because Janus concerned only the constitutionality of
a public sector union's mandatory imposition of agency fees. See
Reisman, 939 F.3d at 414. Peltz-Steele nonetheless contends that
the law of the circuit doctrine, which obliges us to follow closely
on point circuit precedent unless it has been undermined by
intervening Supreme Court precedent or some other compelling
authority, id. (citing United States v. Barbosa, 896 F.3d 60, 74
(1st Cir. 2018)), does not require us to affirm the District
Court's judgment for two independent reasons. As we will explain,
neither reason is persuasive.

**A.**

We begin with Peltz-Steele's contention that <u>Reisman</u> is not controlling here because it is distinguishable on the facts and so the law of the circuit doctrine has no application in his case.  The factual distinction on which Peltz-Steele relies is based on a difference in wording between the Massachusetts statute at issue here and the Maine statute at issue in <u>Reisman</u>.  In pressing this contention, Peltz-Steele does not dispute that, as the District Court explained, <u>Reisman</u> rejected a post-<u>Janus</u> challenge to provisions of a Maine law that authorized state-university employees to elect an exclusive representative to bargain with the university system on the ground that "the statute did not designate the union [as the plaintiff's] <u>personal</u> representative, but rather the representative of his '[bargaining] <u>unit</u> as an entity.'"  <u>Peltz-Steele</u>, 2022 WL 3681824, at *7 (quoting <u>Reisman</u>, 939 F.3d at 413) (emphases and second alteration in original).  Nor does he dispute that <u>Reisman</u> concluded that this feature of the Maine law was significant because it revealed that one could not understand the union's speech in that case to constitute the speech of an individual nonunion employee -- much less of a dissenting member of the bargaining unit who paid no dues to the union that served as the exclusive bargaining representative.  <u>See</u> 939 F.3d at 414.  Peltz-Steele contends only that this rationale has no application here because the

Massachusetts statutory scheme that he is challenging does not make a similar distinction between the bargaining unit for which the union is the exclusive representative and the individual employees in that unit that Reisman deemed dispositive.

To make that case, Peltz-Steele points to language of the Massachusetts statute that states that the exclusive representative shall have the right to act for and negotiate agreements covering "all employees in the unit" and shall be responsible for representing "the interests of all such employees." Mass. Gen. Laws ch. 150E, § 5. He points as well to Section 4 of Chapter 150E, which provides that "[p]ublic employers may recognize an employee organization designated by the majority of the employees in an appropriate bargaining unit as the exclusive representative of all the employees in such unit for the purpose of collective bargaining."

But, the fact that the Massachusetts statute recognizes that a bargaining unit is composed of a number of individual employees does not make the statute materially different from the Maine statute that we upheld in Reisman. After all, the Maine statute that Reisman upheld itself provided that "[t]he bargaining agent certified as representing a bargaining unit shall be recognized by the university, academy or community colleges as the sole and exclusive bargaining agent for all of the employees in the bargaining unit . . . ." See Me. Stat. tit. 26, § 1025

(emphasis added).  In addition, that statute provided that "the exclusive bargaining agent for a unit is required to represent all the university, academy or community college employees within the unit without regard to membership," id., and that "bargaining agent" "means any lawful [organization or its representative] which has as one of its primary purposes the representation of employees in their employment relations with employers and which has been certified by the Executive Director of the Maine Labor Relations Board," id. § 1022.

Moreover, a provision of the Massachusetts statute at issue here that Peltz-Steele does not reference makes clear that, like the Maine statute at issue in Reisman, 939 F.3d at 412-13, the Massachusetts statute authorizes a union selected to be an exclusive bargaining representative to bargain only on behalf of the bargaining unit and not on behalf of any individual employee independent of the unit itself.  Indeed, the very first section of Chapter 150E defines the "written majority authorization" necessary to serve as such a representative as a writing "signed and dated by employees . . . in which a majority of employees in an appropriate bargaining unit designates an employee organization as its representative for the purpose of collective bargaining." Mass. Gen. Laws ch. 150E, § 1 (emphases added).

Thus, there is no material distinction between this Massachusetts law and the Maine law that we upheld in Reisman.

Accordingly, Reisman may not be distinguished on the facts, and so this ground for contending that the law of the circuit doctrine does not dictate the outcome here is unconvincing.

**B.**

That leaves Peltz-Steele's contention that Reisman is not controlling here because, even if that case is not different factually from this one, Reisman failed to consider key aspects of the Supreme Court's ruling in Janus.

But, here, too, we are not persuaded. As we have noted, Peltz-Steele recognizes that Reisman expressly addressed the import of Janus in upholding the Maine measure against First Amendment challenges very much like those that he brings against the defendants in this case. In that regard, Reisman explained that D'Agostino held that there is "no violation of associational rights by an exclusive bargaining agent speaking for their entire bargaining unit when dealing with the state," in part based on the Supreme Court's decision in Minnesota State Board for Community Colleges v. Knight, 465 U.S. 271 (1984). See Reisman, 939 F.3d at 414 (emphasis in original) (quoting D'Agostino, 812 F.3d at 243). There, the Supreme Court held that there is no such violation of associational rights by an exclusive bargaining agent speaking for the entire bargaining unit on matters "even outside collective bargaining." Id. at 414 (emphasis in original) (quoting D'Agostino, 812 F.3d at 243). Reisman further explained

that, although Janus was decided after D'Agostino, Janus's holding
did not provide a basis for disregarding D'Agostino because Janus
focused only on "the unconstitutionality of a statute that
require[d] a bargaining unit member to pay an agency fee to her
unit's exclusive bargaining agent." Id. (emphasis added).

Nonetheless, Peltz-Steele points out that Reisman did
note that it considered the plaintiff's argument that Janus
provides "a basis for disregarding D'Agostino" waived because the
contention was only made in a reply brief. Id. He thus contends
that nothing in Reisman bars us from now considering the preserved
arguments that he advances as to why Janus does undermine
D'Agostino -- and so Reisman as well.

To make that case, Peltz-Steele first points to a passage
in Janus that states that "designating a union as the exclusive
representative of nonmembers substantially restricts the
nonmembers' rights." 138 S. Ct. at 2469. He then also points to
a passage in Janus that states that it was not in dispute there
that "the State may require that a union serve as [the] exclusive
bargaining agent for its employees -- itself a significant
impingement on associational freedoms that would not be tolerated
in other contexts." Id. at 2478 (emphasis added).

Peltz-Steele contends that these statements in Janus
reveal the limited reach of the Supreme Court's previous statement
in Knight that exclusive representation "in no way restrained [the

- 14 -

plaintiff's] . . . freedom to associate or not to associate."  465
U.S. at 288.  Knight's holding, he asserts, was limited to whether
public sector employees have a First Amendment right to compel the
government to negotiate with them "instead of, or in addition to,
the union."  And thus, given the passages in Janus to which he
points, he further contends that Knight cannot be read to cast any
doubt on his First Amendment claim, insofar as that claim rests on
an infringement of his right to be free from compelled speech and
association.  He then argues from this premise that, because we
relied on Knight in D'Agostino, and in turn relied on D'Agostino
in Reisman, to reject a claim that public sector exclusive
bargaining compels nonunion members' speech and nonunion members'
association with the union in violation of the First Amendment,
Janus is best read to reveal that neither D'Agostino nor Reisman
provides a basis for rejecting his First Amendment claim here.

        We may assume for the sake of argument that Peltz-Steele
is right both in his characterization of what Knight holds and in
his contention that Reisman does not bar us from considering the
additional arguments regarding the import of Janus that he now
advances on appeal.  And that is so because we do not find those
arguments to provide any basis for finding merit in his contention
that his First Amendment rights have been infringed by the
designation pursuant to Chapter 150E of the Union as the exclusive

- 15 -

bargaining representative for "all employees" within his bargaining unit.

The first statement in <u>Janus</u> that Peltz-Steele points to -- that exclusive representation is "itself a significant impingement on associational freedoms that would not be tolerated in other contexts" -- came as the Court was explaining that it "readily acknowledge[s]" that government employers are afforded "greater . . . power to regulate [the] speech" of employees than the "citizenry in general," <u>Janus</u>, 138 S. Ct. at 2477-78 (quoting <u>Pickering</u> v. <u>Bd. of Ed.</u>, 391 U.S. 563, 568 (1968)), but that it was "draw[ing] the line at allowing the government to <u>go further still</u> and require all employees to <u>support the union</u> irrespective of whether they share its views," <u>id.</u> (emphases added); <u>see also id.</u> at 2471-73, 78 (describing the "<u>Pickering</u> line of cases" as less applicable where government employees are compelled to "subsidize" speech). Thus, far from representing a rejection of <u>Knight</u>'s reasoning, let alone the reasoning we relied on in <u>D'Agostino</u> and <u>Reisman</u>, this passage from <u>Janus</u> identifies exclusive bargaining in the public sector as something no party in the case challenged -- while also acknowledging the uncontroversial point that a system in which the government designates a single entity to represent the interests of a group of people might result in an intolerable "impingement on

- 16 -

associational freedoms" in "other contexts."   See Janus, 138
S. Ct. at 2478 (emphasis added).

        The other statement from Janus that Peltz-Steele latches
onto -- that exclusive bargaining "substantially restricts the
nonmembers' rights" -- offers him no more support for concluding
that the Court in that case was rejecting any prior conclusion as
to the impact of exclusive representation on associational
freedoms, much less casting doubt on the particular reasoning that
underlies D'Agostino and Reisman -- i.e., that the activities of
a designated bargaining unit's exclusive representative simply
cannot be imputed to nonunion employees by nature of their
representation of the unit.   Reisman, 939 F.3d at 414; D'Agostino,
812 F.3d at 244; see also Knight, 465 U.S. at 289-90 (noting that
nonmembers "are free to form whatever advocacy groups they like"
and face "no different . . . pressure to join a majority party
tha[n] persons in the minority always feel").   Rather, that
statement does not even refer specifically to First Amendment
speech or associational rights.   See Janus, 138 S. Ct. at 2460,
2469.   And, even if we assume that by referencing a "restrict[ion]"
on "nonmembers' rights" the Supreme Court really meant
"nonmembers' speech and associational rights," the reference can
only be understood in the sense that we have just discussed in
connection with the other passage of Janus to which Peltz-Steele
points.

Our conclusion that Peltz-Steele is overreading the passages from Janus in question draws further support from another passage in Janus itself that Peltz-Steele ignores. In explaining that the union's asserted need to charge nonunion employees agency fees to cover the costs of representing such employees in grievance proceedings did not supply a sufficiently compelling state interest to overcome heightened review, the Court noted that unions could instead use a "less restrictive" system in which nonmember employees pay for such services only if they use them -- or simply deny representation to nonmembers in grievance proceedings altogether. Id. at 2468-69. The Court explained in a similar vein that mandatory agency fees could not "be justified on the ground that it would otherwise be unfair to require" unions "to bear the duty of fair representation" because "[t]hat duty is a necessary concomitant of the authority that a union seeks when it chooses to serve as the exclusive representative of all the employees in a unit." Id. at 2469.

These explanations as to why the imposition of mandatory agency fees on nonunion employees could not withstand heightened scrutiny would make little sense if the Supreme Court meant simultaneously to cast into doubt the constitutionality of state laws that allow a public sector employer to treat a union as an exclusive bargaining representative for employees within a designated bargain unit. See Branch, 120 N.E.3d at 1175 ("Janus

and the other Supreme Court cases have thus not questioned the constitutionality of exclusive representation. The Court has, however, inextricably coupled exclusive representation with a union's duty of fair representation."); see also Janus, 138 S. Ct. at 2485 n.27 ("States can keep their labor-relations systems exactly as they are -- only they cannot force nonmembers to subsidize public-sector unions. In this way, these States can follow the model of the federal government and 28 other States.").

### III.

In ruling as we do, we align ourselves with every Court of Appeals to have addressed the issue post-Janus. See Hendrickson v. AFSCME Council 18, 992 F.3d 950, 968-70 (10th Cir.), cert. denied, 142 S. Ct. 423 (2021); Mentele v. Inslee, 916 F.3d 783 (9th Cir.), cert. denied sub nom. Miller v. Inslee, 140 S. Ct. 114 (2019); Bierman v. Dayton, 900 F.3d 570 (8th Cir. 2018), cert. denied sub nom. Bierman v. Walz, 139 S. Ct. 2043 (2019); Bennett v. AFSCME Council 31, 991 F.3d 724, 733-35 (7th Cir.), cert. denied, 142 S. Ct. 424 (2021); Ocol v. Chi. Tchrs. Union, 982 F.3d 529 (7th Cir. 2020), cert. denied, 142 S. Ct. 423 (2021); Thompson v. Marietta Educ. Ass'n, 972 F.3d 809 (6th Cir. 2020), cert. denied, 141 S. Ct. 2721 (2021); Akers v. Md. State Educ. Ass'n, 990 F.3d 375, 382 n.3 (4th Cir. 2021); Adams v. Teamsters Union Loc. 429, 2022 WL 186045 (3d Cir. Jan. 20, 2022), cert. denied, 143 S. Ct. 88 (2022); see also Branch, 120 N.E.3d at 1176-79. The

uniformity of the way in which these courts have resolved similar
First Amendment challenges is hardly surprising, as it well
comports with the "majoritarian principle" underlying the "long
and consistent adherence" to "exclusive representation" under the
federal National Labor Relations Act, which the Supreme Court has
recognized is "tempered" by the recognition and protection of
"minority interests."   See Emporium Capwell Co. v. W. Addition
Cmty. Org., 420 U.S. 50, 62-65 (1975) ("In establishing a regime
of majority rule, Congress sought to secure to all members of the
unit the benefits of their collective strength and bargaining
power, in full awareness that the superior strength of some
individuals or groups might be subordinated to the interest of the
majority.  As a result, 'the complete satisfaction of all who are
represented is hardly to be expected.'" (footnote, internal
alteration, and internal citations omitted) (quoting Ford Motor
Co. v. Huffman, 345 U.S. 330, 338 (1953))).

## IV.

The judgment of the District Court is **affirmed**.