No. 22-1466

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

RICHARD J. PELTZ-STEELE,

*Plaintiff-Appellant*,

v.

UMASS FACULTY FEDERATION, LOCAL 1895 AMERICAN FEDERATION
OF TEACHERS, AFL-CIO; MARTIN MEEHAN, in his official capacity as
President of the University of Massachusetts; MAURA TRACY HEALEY, in her
official capacity as Attorney General of the Commonwealth of Massachusetts;
MARJORIE F. WITTNER, in her official capacity as member of the
Commonwealth Employment Relations Board; JOAN ACKERSTEIN, in her
official capacity as member of the Commonwealth Employment Relations Board;
KELLY STRONG, in her official capacity as member of the Commonwealth
Employment Relations Board,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the District of Massachusetts
Hon. William G. Young

_____

**BRIEF OF APPELLEE UMASS FACULTY FEDERATION, LOCAL 1895**

_____

Jacob Karabell
Bredhoff & Kaiser P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
(202) 842-2600
jkarabell@bredhoff.com

## CORPORATE DISCLOSURE STATEMENT

Defendant UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO is an unincorporated labor organization and there is no corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

**PAGE**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS............................................................................... ii

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF THE ISSUE....................................................................1

STATEMENT OF THE CASE......................................................................1

SUMMARY OF THE ARGUMENT ...........................................................5

ARGUMENT ...........................................................................................8

    I.   This Court's Decision in *D'Agostino*, Which Relied on the
Supreme Court's Decision in *Knight*, Is Controlling and
Dispositive. ................................................................................11

    II.  Exclusive Representation Infringes No Right of Speech or
Association. ...............................................................................20

CONCLUSION.......................................................................................27

CERTIFICATE OF COMPLIANCE........................................................28

CERTIFICATE OF SERVICE .................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett*,
   556 U.S. 247 (2009)................................................................................9

*Abood v. Detroit Bd. of Educ.*,
   431 U.S. 209 (1977)..............................................................................14

*Adams v. Teamsters Union Local 429*,
   No. 20-1824, 2022 WL 186045 (3d Cir. Jan. 20, 2022)........................11, 16, 20

*Akers v. Md. State Educ. Ass'n*,
   990 F.3d 375 (4th Cir. 2021) .......................................................11, 16

*Bd. of Educ. v. Mergens*,
   496 U.S. 226 (1990)..............................................................................24

*Bennett v. Council 31 of AFSCME*,
   991 F.3d 724 (7th Cir. 2021) .......................................................11, 16

*Bierman v. Dayton*,
   900 F.3d 570 (8th Cir. 2018) .......................................................11, 16

*Bierman v. Dayton*,
   No. 14-3021, 2014 WL 5438505 (D. Minn. Oct. 22, 2014)..............................26

*Branch v. Commonwealth Emp. Rels. Bd.*,
   481 Mass. 810, 120 N.E.3d 1163 (Mass. 2019) .....................................9, 12, 14

*D'Agostino v. Baker*,
   812 F.3d 240 (1st Cir. 2016)...............................................................*passim*

*Emporium Capwell Co. v. W. Addition Cmty. Org.*,
   420 U.S. 50 (1975)................................................................................9

*Harris v. Quinn*,
   573 U.S. 616 (2014)................................................................................9

*Hendrickson v. AFSCME Council 18*,
   992 F.3d 950 (10th Cir. 2021) .......................................................12, 16

*Hill v. SEIU*, 850 F.3d 861 (7th Cir. 2017)...............................................................11

*Houde Eng'g Corp.*, 1 N.L.R.B. (Old) 35 (1934)....................................................10

*Janus v. AFSCME Council 31*,
    138 S. Ct. 2448 (2018)...................................................................*passim*

*Jarvis v. Cuomo*,
    660 F. App'x 72 (2d Cir. 2016) ........................................................11

*Knight v. Minn. Cmty. Coll. Fac. Ass'n*,
    460 U.S. 1048 (1983)........................................................................18

*Knight v. Minn. Cmty. Coll. Fac. Ass'n*,
    571 F. Supp. 1 (D. Minn. 1982).......................................................18

*Lathrop v. Donohue*,
    367 U.S. 820 (1961)...................................................................24, 25

*Mentele v. Inslee*,
    916 F.3d 783 (9th Cir. 2019) .....................................................12, 16

*Minn. State Bd. for Cmty. Colls. v. Knight*,
    465 U.S. 271 (1984).....................................................................*passim*

*Ocol v. Chi. Tchrs. Union*,
    982 F.3d 529 (7th Cir. 2020) ...........................................................11

*PruneYard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980)............................................................................24

*Reisman v. Associated Facs. of the Univ. of Me.*,
    939 F.3d 409 (1st Cir. 2019)..........................................4, 11, 15, 17

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
    547 U.S. 47 (2006)............................................................................24

*Smith v. Ark. State Highway Emps., Local 1315*,
    441 U.S. 463 (1979).........................................................................19

*Steele v. Louisville & N.R. Co.*,
    323 U.S. 192 (1944)............................................................................9

*Thompson v. Marietta Educ. Ass'n,*
    972 F.3d 809 (6th Cir. 2020) ........................................................................11, 16

*United States v. Barbosa,*
    896 F.3d 60 (1st Cir. 2018)........................................................................17

**Statutes**

5 U.S.C. § 7101 ........................................................................................10

5 U.S.C. § 7111 ........................................................................................10

29 U.S.C. § 159 .......................................................................................2, 8

42 U.S.C. § 1983 ........................................................................................3

45 U.S.C. § 152 ..........................................................................................8

Mass. Gen. Laws ch. 150E, § 2........................................................................1

Mass. Gen. Laws ch. 150E, § 4.....................................................................1, 21

Mass. Gen. Laws ch. 150E, § 5.....................................................................1, 25

Mass. Gen. Laws ch. 150E, § 6....................................................................21, 22

Mass. Gen. Laws ch. 150E, § 9........................................................................22

## STATEMENT OF THE ISSUE

Whether the foundational principle of America labor law—the principle of exclusive representation of a bargaining unit by a union chosen democratically by the majority—is unconstitutional.

## STATEMENT OF THE CASE

**A.**    At issue in this case are provisions of the Massachusetts Public Sector Collective Bargaining Statute, Mass. Gen. Laws ch. 150E ("Massachusetts Act"). Enacted in 1973, the Act extended collective-bargaining rights to most state and municipal employees in the Commonwealth, including employees of the University of Massachusetts. The Act provides generally that the members of a bargaining unit of public employees may choose, by majority action, to be represented by a union for purposes of collective bargaining with their public employer "on questions of wages, hours, and other terms and conditions of employment." Mass. Gen. Laws ch. 150E, § 2. Such a union is "designated . . . as the exclusive representative of all the employees in such unit for the purpose of collective bargaining," *id.* § 4, and thus "shall have the right to act for and negotiate agreements covering all employees in the unit," *id.* § 5. A union so certified "shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership." *Id.*

1

In all of these respects the Massachusetts Act follows the exclusive-representation model created by Congress in 1935 with respect to private-sector labor relations. *See generally* 29 U.S.C. §§ 158(d), 159.

The UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO ("Union" or "Faculty Federation") has been certified under the Massachusetts Act as the exclusive bargaining representative of a unit of professional employees of the University of Massachusetts at Dartmouth ("UMass Dartmouth" or "University"). Appendix 3 (Compl. ¶ 11). Plaintiff Richard Peltz-Steele, a law professor employed by UMass Dartmouth, is a member of the bargaining unit represented by the Faculty Federation, though he is not a dues-paying member of the Union. Appendix 4 (Compl. ¶¶ 14-16).

In September 2020, a coalition of unions that represent certain bargaining units of UMass Dartmouth employees, including the Faculty Federation, collectively entered into negotiations with the University to address financial losses related to the COVID-19 pandemic. Appendix 4 (Compl. ¶¶ 17-21). The University's initial proposal would have resulted in layoffs of at least 80 bargaining-unit employees. *Id.* (Compl. ¶ 19). The unions instead worked with the University to negotiate an agreement ensuring that no bargaining-unit employee would be laid off until at least July 1, 2021. District Court ECF No. 23-2 at 4 (¶ 13). In exchange, the unions agreed to a formula for progressive salary

2

reductions for all employees during this time period, whereby there would be no reduction of the first $30,000 of each employee's regular salary but there would be increasing salary reductions for each $5,000 in salary exceeding this threshold. *Id.* at 2-3 (¶¶ 4-5). Plaintiff believes that the Faculty Federation's proposals in these negotiations were "in opposition to [his] own goals and priorities," and it is his opinion that the Union should "have consider[ed] a variety of other options, such as a reduction in redundant administrative staff." Appendix 4, 10 (Compl. ¶¶ 21, 52).

**B.**    On September 28, 2021, Plaintiff filed a complaint under 42 U.S.C. § 1983 against the Union and certain state officials ("State Defendants"). The complaint contends that the system of exclusive representation under Massachusetts law violates the First Amendment because it "compels Plaintiff to associate with the Union" and "compels him to petition the government with a certain viewpoint." App. 10 (Compl. ¶ 52). Plaintiff asked the district court to "[e]nter a judgment declaring that the exclusive representation provided for in [the Massachusetts Act] is unconstitutional" and "enjoin [the Union] from acting as the exclusive representative of employees who are not members of the Union." App. 12 (Prayer for Relief ¶¶ a, e).[1]

---

[1] Plaintiff brought an additional First Amendment claim against the Union and the State Defendants that was voluntarily dismissed. *See* Addendum 3. It is not at issue in this appeal. Pl. Br. 7 n.2.

On May 11, 2022, the district court granted the Union and the State Defendants' motions to dismiss from the bench. Appendix 20-21. In its subsequent written opinion, the court explained that the First Circuit's decision in *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir. 2016), foreclosed Plaintiff's claim that exclusive representation violates the First Amendment. In *D'Agostino*, the First Circuit held "that 'exclusive bargaining representation by a democratically selected union does not, without more, violate' the speech or associational rights of dissenting employees in a bargaining unit." Addendum ("Add.") 14-15 (quoting *D'Agostino*, 812 F.3d at 243-45). *D'Agostino*, in turn, principally relied on the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), which also rejected a First Amendment challenge to exclusive representation. While Plaintiff argued that *Knight* was distinguishable from his claim, the district court disagreed. As the court explained, "[*Knight*'s] holding is unambiguous: exclusive representation by public-sector labor unions does not violate the speech or associational rights of non-union members." Add. 17.

The district court went on to reject Plaintiff's argument that *Knight* and *D'Agostino* were "superseded" by the Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). Add. 18. The court noted that the First Circuit "already answered the question" of whether *Janus* superseded *D'Agostino* in *Reisman v. Associated Faculties of the University of Maine*, 939

4

F.3d 409 (1st Cir. 2019), where the First Circuit held that *D'Agostino* remains good law. Add. 20. The district court added that "*Reisman* is by no means an outlier: every circuit to hear a post-*Janus* challenge has rejected the notion that *Janus* overrules *Knight* or undermines the constitutionality of exclusive representation." Add. 23-24 (citing cases from the Third, Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits).

Finally, the district court concluded its opinion by observing that, while "precedent compels" the dismissal of Plaintiff's challenge to exclusive representation, "so too do commonsense understandings of representative relationships." The court continued:

> Although private in nature, exclusive union representation echoes the representative structures of American democracy both in its assets and its imperfections, fostering a majoritarianism tempered by constraints of fair representation but which inescapably yields a dissenting minority. Non-union dissenters may feel aggrieved that their policy preferences do not prevail; like a voter whose disfavored political party holds office, however, they are neither required to join the representative union nor perceived as endorsing its conduct. Their First Amendment rights are left unscathed.

Add. 27 (citations omitted).

## SUMMARY OF THE ARGUMENT

The exact issue presented by this appeal—whether the exclusive-representation provisions of the Massachusetts Act violate the First Amendment rights of members of the bargaining unit who may not agree with their

democratically selected representative on some or all issues—was squarely decided by this Court in *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir. 2016).

In *D'Agostino*, this Court held that these provisions of the Massachusetts Act do not violate the First Amendment, relying principally on the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984). As *D'Agostino* observed, *Knight* held that neither a right to speak nor a right to associate was infringed by exclusive representation. This Court also rejected the *D'Agostino* plaintiffs' argument that a union's speech *qua* exclusive representative is imputable to non-union dissenters and thus compels their speech in violation of the First Amendment. "When an exclusive bargaining agent is selected by majority choice," the Court explained, "it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority." 812 F.3d at 244.

Plaintiff's attempts to avoid *D'Agostino* fail. While Plaintiff argues that *D'Agostino* is no longer good law following the Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), in which the Court held that it violates the First Amendment to require individuals who are not union members to pay a fee for the costs of union representation, this Court already has rejected this very argument in a post-*Janus* challenge to exclusive representation. And while Plaintiff also argues that the Supreme Court's decision in *Knight* is "inapposite" to

6

his claims, this Court twice has held that *Knight* forecloses First Amendment challenges to exclusive representation indistinguishable from Plaintiff's challenge here. In all events, Plaintiff's strained reading of *Knight* has no merit on its own terms. *Knight* held that exclusive representation in no way restrains the speech and associational rights of members of the bargaining unit who may disagree with positions taken by the exclusive representative.

Even if this Court were considering Plaintiff's claim as a matter of first impression, moreover, his contention that his First Amendment rights are infringed by the University's recognition of and bargaining with an exclusive representative of its faculty would go nowhere. Under the Massachusetts Act, no member of the bargaining unit—including Plaintiff—is required to join, to refrain from joining, or to support (financially or otherwise) the Faculty Federation or any other organization. And nothing in the exclusive-representation arrangement constrains Plaintiff's right to communicate with the University or any other governmental entity on matters of concern to him. It is simply not accurate to say, as Plaintiff insists, that exclusive representation "forces" him to "voice ideas" with which he disagrees. Views expressed by the exclusive representative are the official positions of the bargaining unit as a whole, which cannot reasonably be attributed to each individual member of the unit. Nor does exclusive representation require

Plaintiff to associate with the Union in any way, as his status as a member of the bargaining unit represented by the Union imposes no burdens whatsoever on him.

## ARGUMENT

This case is one of more than 20 cases filed across the country in the last decade that takes aim as a fundamental pillar—indeed *the* fundamental pillar —of the American system of labor relations in the public and private sectors. Nearly a century ago, Congress established the principle—first in the Railway Labor Act ("RLA") and subsequently in the National Labor Relations Act ("NLRA")—that "[r]epresentatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a) (NLRA); *see also* 45 U.S.C. § 152-Fourth (RLA). Accordingly, once the employees in the bargaining unit choose a labor union to represent them, *only* that union can negotiate terms and conditions of employment with the employer, and the agreements that the union negotiates with the employer run to the benefit of every employee in the bargaining unit—whether or not the employee chooses to become a dues-paying member of the union.

In repeated decisions, the Supreme Court has emphasized that this system of collective bargaining through an exclusive representative selected by the will of the majority is at the heart of national labor policy, noting most recently in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), that the "'principle of majority rule' to which respondents object is in fact the central premise of the NLRA." *Id.* at 270; *see also Emporium Capwell Co. v. W. Addition Cmty. Org.*, 420 U.S. 50, 62-63 (1975); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202 (1944).

The same system of exclusive representation by a majority-selected union has been adopted in the public sector by virtually all of the 41 states that allow collective bargaining by some or all of their public employees, including Massachusetts. *See Branch v. Commonwealth Emp. Rels. Bd.*, 481 Mass. 810, 819-20, 120 N.E.3d 1163, 1172 (Mass. 2019) ("exclusive representation concept is a basic building block of labor law policy under G. L. c. 150E") (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 858 (2020).[2] And it is the model that Congress adopted for federal civil-service employees in 1978, on the basis that "experience in both private and public employment indicates that the statutory protection of the right . . . to . . . bargain collectively . . . safeguards the public

---

[2] *See also* Br. for New York et al. as Amici Curiae Supporting Respondents, *Harris v. Quinn*, 573 U.S. 616 (2014) (No. 11-681), 2013 WL 6907713, at *8 n.3 & Appendix (U.S. Dec. 30, 2013) (citing statutory authorizations of exclusive representation).

interest [and] contributes to the effective conduct of public business." 5 U.S.C.

§ 7101(a)(1)(A), (B); *see also id.* § 7111.

The choice of exclusive representation as the foundational principle of American labor law in both the public and private sectors was a product of the recognition that it was the only practical way to implement the governmental policy of encouraging collective bargaining, as well the fact that this system follows the same basic democratic principles upon which the American political system is based. The National Labor Relations Board, in its earliest days, emphasized precisely this parallel:

> This Board, therefore, stands upon the majority rule. And it does so the more willingly because the rule is in accord with American traditions of political democracy, which empower representatives elected by the majority of the voters to speak for all the people.

*Houde Eng'g Corp.*, 1 N.L.R.B. (Old) 35, 43 (1934).

The instant challenge to exclusive representation in Massachusetts' system of public-sector labor relations, and indeed to the system of labor relations that this country has known for nearly a century, asks the Court to hold that the First Amendment prohibits the State from organizing labor relations with its employees on the basis of the same principle that is at the heart of American representative democracy. As the district court held, and as we explain below, this attack on collective bargaining is squarely—and correctly—foreclosed by Supreme Court and Circuit precedent.

I.  **This Court's Decision in *D'Agostino*, Which Relied on the Supreme Court's Decision in *Knight*, Is Controlling and Dispositive.**

A.  In considering Plaintiff's First Amendment challenge to exclusive representation, this Court has the benefit not only of the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), but also this Court's own recent rulings in *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir.), *cert. denied*, 579 U.S. 909 (2016), and *Reisman v. Associated Faculties of the University of Maine*, 939 F.3d 409 (1st Cir. 2019), *cert. denied*, 141 S. Ct. 445 (2020). Like this Court, seven other courts of appeals have applied *Knight* to reject a First Amendment challenge to exclusive representation, with the Supreme Court denying every petition for certiorari that has asked the Court to reconsider or limit *Knight*. *See Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016) (non-precedential), *cert. denied*, 137 S. Ct. 1204 (2017); *Adams v. Teamsters Union Local 429*, No. 20-1824, 2022 WL 186045, at *2 (3d Cir. Jan. 20, 2022) (non-precedential), *cert. denied*, 2022 WL 4651460 (U.S. Oct. 3, 2022); *Akers v. Md. State Educ. Ass'n*, 990 F.3d 375, 382 n.3 (4th Cir. 2021); *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2721 (2021); *Hill v. SEIU*, 850 F.3d 861 (7th Cir.), *cert. denied*, 138 S. Ct. 446 (2017); *Ocol v. Chi. Tchrs. Union*, 982 F.3d 529, 532-33 (7th Cir. 2020); *cert. denied*, 142 S. Ct. 423 (2021); *Bennett v. Council 31 of AFSCME*, 991 F.3d 724, 732-35 (7th Cir.), *cert. denied*, 142 S. Ct. 424 (2021); *Bierman v. Dayton*, 900 F.3d 570 (8th Cir.

11

2018), *cert. denied sub nom. Bierman v. Walz*, 139 S. Ct. 2043 (2019); *Mentele v. Inslee*, 916 F.3d 783 (9th Cir.), *cert. denied sub nom. Miller v. Inslee*, 140 S. Ct. 114 (2019); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 968-70 (10th Cir.), *cert. denied*, 142 S. Ct. 423 (2021); *see also Branch*, 481 Mass. at 819-26, 120 N.E.3d at 1171-76.

This Court's decision in *D'Agostino* is binding, on-point precedent that forecloses Plaintiff's claim. *D'Agostino* was brought by a group of child-care providers who were represented by a union pursuant to the exclusive-representation provisions of the Massachusetts Act.[3] While the *D'Agostino* plaintiffs, like Plaintiff Peltz-Steele in this case, had not become dues-paying members of the union and were not required to provide any financial support to the union, they nonetheless "challeng[ed] the statutory scheme that authorizes the selection of an exclusive bargaining agent"—with the plaintiffs claiming that these provisions of the Massachusetts Act "violat[ed] their rights of freedom of association and other expressive rights guaranteed by the First Amendment." 812 F.3d at 242.

Affirming the district court's dismissal of the complaint, this Court relied principally on *Knight. Knight* involved a First Amendment challenge to legislation

---

[3] The exclusive-representation provisions of the Massachusetts Act apply to family child-care providers. Mass. Gen. Laws. ch. 15D, § 17(b).

providing that if a majority of college faculty selected a union to represent them,

the university could meet only with that union to discuss both collective-bargaining

topics and other "policy questions" outside the scope of mandatory collective

bargaining. *Knight*, 465 U.S. at 273. The *D'Agostino* court explained that in *Knight*

> [t]he Court held that neither a right to speak nor a right to associate was infringed [by exclusive representation]; like the appellants here, the academic employees in *Knight* could speak out publicly on any subject and were free to associate themselves together outside the union however they might desire. Their academic role was held to give them no variance from the general rules that there is no right to compel state officials to listen to them, and no right to eliminate the amplification that an exclusive agent necessarily enjoys in speaking for the unionized majority.

*D'Agostino*, 812 F.3d at 243 (citations omitted).

The *D'Agostino* court went on to specifically reject the plaintiffs' argument

that exclusive representation results in a compelled association in violation of the

First Amendment, *id.* at 244, as well as the argument that a union's speech *qua*

exclusive representative is "imputable to a non-union dissenter" and thus

compelled speech in violation of the First Amendment, *id.* In rejecting the latter

argument, the court explained that "when an exclusive bargaining agent is selected

by majority choice, it is readily understood that employees in the minority, union

or not, will probably disagree with some positions taken by the agent answerable to

the majority." *Id.* It added that "[t]he freedom of the dissenting appellants to speak

out publicly on any union position further counters the claim that there is an

13

unacceptable risk the union speech will be attributed to them contrary to their own views." *Id.*

*D'Agostino* cannot be distinguished from this case. Plaintiff bases his claim on his contentions that the Faculty Federation's certification as exclusive representative impermissibly "compels Plaintiff to associate with the Union" and "compels him to petition the government with a certain viewpoint." Appendix 10 (Compl. ¶ 52). As noted, both of these contentions were expressly rejected by this Court in *D'Agostino*, where the plaintiffs challenged the same provisions of the Massachusetts Act that Plaintiff challenges here. *Accord Branch*, 481 Mass. at 819-26 & n.22, 120 N.E.3d at 1171-76 & n.22 (agreeing with *D'Agostino* that exclusive-representation provisions of Mass. Gen. Laws 150E are constitutional).

**B.**    Plaintiff tenders two arguments, one direct and one indirect, as to why *D'Agostino* does not control. The district court was correct to reject both arguments.

*1.*    Plaintiff first argues that *D'Agostino* does not control because *D'Agostino* cited to the Supreme Court's since-overruled decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). *See* Pl. Br. 27-28. In *Abood*, the Court held that it did not violate the First Amendment for a state to require public-sector employees to pay an "agency fee" for the costs of union representation. That holding was overruled in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018),

14

where the Court held that an agency-fee requirement is a compelled subsidy that violates the First Amendment.

This very argument—that *Janus* provides grounds for this Court to abrogate *D'Agostino*—was made to this Court by the appellant in the *Reisman* case. There, the appellant devoted an entire section of his brief to arguing that "*D'Agostino* cannot be reconciled with *Janus* and should be formally overruled.*" Appellant's Opening Br., *Reisman v. Associated Faculties of the Univ. of Me.*, 939 F.3d 409 (1st Cir. 2019) (No. 18-2201), 2019 WL 1517399, at *18-21 ("*Reisman* Opening Br.") (section heading; capitalization omitted). This Court expressly *rejected* that argument, holding that "as *Janus* focuses on the unconstitutionality of a statute that requires a bargaining unit member to pay an agency fee to her unit's exclusive bargaining agent, we cannot say that precedent provides us with a basis for disregarding *D'Agostino*.*" *Reisman*, 939 F.3d at 414 (internal citation omitted). *D'Agostino* thus has been reaffirmed by this Court, and its holding that the exclusive-representation provisions of the Massachusetts Act are constitutional controls here.[4]

---

[4] Plaintiff argues that *Reisman* is distinguishable from this case because, he asserts, the Maine exclusive-representation regime challenged in *Reisman* is materially different from the Massachusetts exclusive-representation regime challenged here. Pl. Br. 28-29. He is wrong about that, for the reasons stated by the district court. Add. 21-23. But even if he were correct, *Reisman*'s holding that *D'Agostino* remains the law of this Circuit nonetheless would foreclose his claim, since

We hasten to add that it is not just this Court that has upheld an exclusive-representation regime in the public sector since *Janus*. As the district court observed, "every circuit to hear a post-*Janus* challenge" to exclusive representation—and there have been many—"has rejected the notion that *Janus* overrules *Knight* or undermines the constitutionality of exclusive representation." Add. 24. For example, the Seventh Circuit observed that "*Janus* did not mention, let alone overrule, *Knight* or otherwise question the constitutionality of a system of labor relations based on exclusive representation." *Bennett*, 991 F.3d at 735. That court of appeals pointed to the statement in *Janus* that "[i]t is . . . not disputed that the State may require that a union serve as exclusive bargaining agent for its employees," *id.* (quoting *Janus*, 138 S. Ct. at 2478 (alterations in original)), as well as the Court's assurance that "'[states] can keep their labor-relations systems exactly as they are,' other than charging fair-share fees," *id.* (quoting *Janus*, 138 S. Ct. at 2485 n.27 (alterations in original)). The other six courts of appeals to address the constitutionality of exclusive representation in the wake of *Janus* are in accord. *See Adams*, 2022 WL 186045, at *3; *Akers*, 990 F.3d at 382 n.3; *Thompson*, 972 F.3d at 811-12; *Bierman*, 900 F.3d at 574; *Mentele*, 916 F.3d at 789; *Hendrickson*, 992 F.3d at 969.

---

*D'Agostino* rejected a challenge to the same provisions of the Massachusetts Act that are at issue in this case.

2. Plaintiff indirectly attempts to undermine *D'Agostino* by asserting that the Supreme Court's decision in *Knight*, upon which *D'Agostino* principally relied, is "inapposite" to his claims. Pl. Br. 27. According to Plaintiff, *Knight* involved only a request by the plaintiffs to require the government to listen to their views in a formal setting. Pl. Br. 22. This Court, however, twice has held that *Knight does* foreclose First Amendment challenges to exclusive representation indistinguishable from Plaintiff's challenge here. *See D'Agostino*, 812 F.3d at 243-44; *Reisman*, 939 F.3d at 414.[5] Thus, "[r]egardless of whether Peltz-Steele's reading of *Knight* has merit, this Court is bound by [its own] precedent." Add. 15; *see also United States v. Barbosa*, 896 F.3d 60, 74 (1st Cir. 2018) ("law of the circuit" doctrine binds panels to prior circuit decisions; "[w]ithout the law of the circuit doctrine, the finality of appellate decisions would be threatened and every decision, no matter how thoroughly researched or how well-reasoned, would be open to continuing intramural attacks").

In all events, Plaintiff's strained reading of *Knight* has no merit taken on its own terms. In *Knight*, several community college faculty members challenged the

---

[5] The appellants in *D'Agostino* and *Reisman* also argued that *Knight* did not foreclose their compelled-speech and compelled-association challenges to exclusive representation. *See* Appellants' Br., *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir. 2016) (No. 15-1433), Entry ID 5924793, at 29 ("*Knight* addressed only whether it is constitutional to *exclude* employees from union bargaining sessions with public officials."); Reisman Opening Br. 18 ("No First Amendment challenge to compelled representation [was] raised in *Knight*"). This Court disagreed.

exclusive-representation system established by Minnesota's Public Employment
Labor Relations Act, which permitted faculty members to designate, by majority
action, an exclusive representative to "meet and negotiate" with the Board of
Community Colleges about matters within the scope of mandatory bargaining, and
to "meet and confer" with the Board concerning employment-related matters
outside the scope of mandatory bargaining. 465 U.S. at 274-75. Members of the
bargaining unit were not required to join the union, *id.* at 289 & n.11, and they
were free "to speak on any 'matter related to the conditions or compensation of
public employment or their betterment' as long as doing so 'is not designed to and
does not interfere with the full, faithful and proper performance of the duties of
employment or circumvent the rights of the exclusive representative.'" *Id.* at 275
(quoting the statute).

    The plaintiffs contended that the faculty representative's exclusive right to
"meet and negotiate" and "meet and confer" with the public employer violated
their First Amendment speech and associational rights. As to the "meet and
negotiate" requirement, the district court "rejected [plaintiffs'] attack on the
constitutionality of exclusive representation in bargaining over terms and
conditions of employment," *id.* at 278, and the Supreme Court summarily affirmed
that holding. *Id.* at 279 (citing *Knight v. Minn. Cmty. Coll. Fac. Ass'n*, 460 U.S.
1048 (1983)). The district court agreed with the *Knight* plaintiffs, however, that the

"meet and confer" process (over matters outside the scope of mandatory bargaining) "infringe[d] the First Amendment associational rights of faculty members who do not desire to join the [union]." *Knight v. Minn. Cmty. Coll. Fac. Ass'n*, 571 F. Supp. 1, 10 (D. Minn. 1982). The Supreme Court gave plenary consideration to this issue and reversed, concluding that the exclusive-representation system was constitutional even with respect to such matters. 465 U.S. at 288.

The Court, in Part II.A of its opinion, first considered and rejected the plaintiffs' claim that their right to free speech was impaired because (unlike the exclusive representative) they had no "government audience for their views." *Id.* at 282. The Court reasoned that the government was "free to consult or not to consult whomever it pleases," and that "[n]othing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Id.* at 285. Thus, "[a] person's right to speak is not infringed when government simply ignores that person while listening to others." *Id.* at 288; *see also Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463 (1979) (per curiam).

After having made that point, the Court addressed the broader issues of speech and association in Part II.B of its opinion. There, the Court held that by

19

adopting a system of exclusive representation for the college faculty "[t]he State has *in no way* restrained appellees' freedom to speak on any education-related issue or their freedom to associate *or not to associate* with whom they please, including the exclusive representative." 465 U.S. at 288 (emphases added). Plaintiffs were "not required to become members" of the union and were "free to form whatever advocacy groups they like." "Nor has the State attempted to suppress any ideas." *Id.* at 288-89. In short, the plaintiffs' "speech and associational freedom have been wholly unimpaired." *Id.* at 290 n.12.

Plaintiff is simply incorrect, therefore, to claim that *Knight* did not consider whether exclusive representation violates the First Amendment speech and associational rights of individuals who are not dues-paying union members; the Court did so in plain terms in Part II.B of its opinion. It should not be surprising, therefore, that every court to consider a First Amendment challenge to exclusive representation has held that *Knight* controls. *See, e.g.*, *Adams*, 2022 WL 186045, at *2 ("[Plaintiffs] argue that *Knight* was only about whether the employees could demand a forum with their employer. . . . This reading of *Knight*, however, is simply at odds with what it says."); *see also supra* pp. 11-12.

## II.    Exclusive Representation Infringes No Right of Speech or Association.

As we have shown, Plaintiff's argument against exclusive representation is precluded by existing precedent. But even if this Court were considering the

argument as a matter of first impression, Plaintiff's contention that his First

Amendment rights are infringed by the University's recognition of and bargaining

with an exclusive representative of its faculty would go nowhere. Plaintiff's

characterization of the collective bargaining relationship as "forc[ing] all

employees in th[e] unit to associate with the Union," Pl. Br. 15, and requiring the

Union to "speak . . . for individuals against their will," Pl. Br. 14, does not make it

so. To the contrary, collective bargaining through an exclusive representative for

the purpose of negotiating a labor contract imposes no obligation on Plaintiff that

burdens his freedom to speak and associate or not to speak and associate, as he

sees fit.

To evaluate Plaintiff's argument, it is important to recall just what exclusive

representation entails, and what it does not. As already noted, no member of the

bargaining unit is required to join, to refrain from joining, or to support (financially

or otherwise) the Faculty Federation or any other organization. And nothing in the

exclusive-representation arrangement constrains Plaintiff's right to communicate

with the University or any other governmental entity on matters of concern to him.

Instead, the collective bargaining statute establishes a framework by which

public employees are permitted to decide, by majority action, whether an

organization of their choice should be certified as their bargaining representative.

Mass. Gen. Laws ch. 150E, § 4. The consequence of such certification is that the

public employer is required to meet and negotiate in good faith with the exclusive representative "with respect to wages, hours, standards or productivity and performance, and any other terms and conditions of employment." *Id.* § 6. If the parties do not reach agreement after negotiations have transpired for a reasonable period of time, the employer is required to submit to a mediation and fact-finding process to resolve the impasse if the union so requests. *Id.* § 9. That is the core meaning of "exclusive representation" under the Massachusetts Act. The principal restriction it imposes runs against the employer itself: Instead of imposing terms and conditions of employment unilaterally, as it otherwise would be free to do, the employer is obligated to bargain with the exclusive representative over those subjects. While Plaintiff is correct in observing that he cannot negotiate his own employment terms individually, Pl. Br. 7, the salient fact is that collective bargaining through an exclusive representative deprives him of no right that he otherwise would have had: even absent collective bargaining he could not insist that the University negotiate with him, whether regarding a pandemic-related financial shortfall or any other issue.

Instead of attempting to establish any such right, Plaintiff argues that the system of exclusive representation "has two constitutional problems":

> First, it compels speech because the Union speaks on behalf of the employees, as though its speech is the employees' own speech. Second, it compels association because the Union represents everyone in the

bargaining unit without giving dissenting employees the choice not to associate.

Pl. Br. 15. Neither contention—that the Union speaks for Plaintiff individually, or that Plaintiff is forced to associate with the Union—has any substance. We address these two arguments in turn.

**A.** Plaintiff contends that "[e]xclusive representation forces employees to voice ideas with which they disagree." Pl. Br. 16 (quotation omitted); *see also id.* ("Massachusetts law commands Professor Peltz-Steele's involuntary affirmation of beliefs he rejects."). But this Court's analysis in *D'Agostino* identifies the flaw in this argument:

> No matter what adjective is used to characterize it, the relationship [between the union and bargaining-unit members] is one that is clearly imposed by law, not by any choice on a dissenter's part, and when an exclusive bargaining agent is selected by majority choice, it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority.

812 F.3d at 244. Indeed, neither the University officials to whom the Faculty Federation directs its expressive activities, nor the public at large, could reasonably believe that every individual member of the bargaining unit agrees with the views expressed by their bargaining representative—any more than members of the public could reasonably believe that every citizen of Massachusetts agrees with the views expressed by the Governor. The very presumption of democracy—whether in the larger political system or in a union—is that citizens, or members of a

23

bargaining unit, will often disagree with each other and with their elected representatives. People understand that. And the Supreme Court said as much in *Knight*: "The State Board considers the views expressed . . . to be the faculty's official collective position. It recognizes, however, that not every instructor agrees with the official faculty view . . . ." 465 U.S. at 276.

The Supreme Court's cases make quite clear that a plaintiff cannot base a claim of compelled speech on the assertion that speech of some other entity would be attributed to him, unless such attribution would be objectively reasonable. Thus, for example, in *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006), the Court addressed the contention that requiring law schools to allow military recruiters access to campus "could be viewed as sending the message that [the schools] see nothing wrong with the military's policies." *Id.* at 64-65. The Court dismissed that contention as unreasonable:

> We have held that high school students can appreciate the difference between speech a school sponsors and speech the school permits because legally required to do so . . . . Surely students have not lost that ability by the time they get to law school.

*Id.* at 65 (citing *Bd. of Educ. v. Mergens*, 496 U.S. 226, 250 (1990) (students understand that speech of student groups is not school-endorsed)); *see also PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) (views of pamphleteers in a public mall would not "likely be identified" with the mall's owners). Perhaps most directly on point is Justice Harlan's observation, in a case

24

fully analogous to this one, involving mandatory bar membership, that "everyone understands or should understand that the views expressed are those of the State Bar as an entity separate and distinct from each individual." *Lathrop v. Donohue*, 367 U.S. 820, 859 (1961) (Harlan, J., concurring) (internal quotation marks omitted).

The government, of course, cannot compel citizens to affiliate themselves with messages with which they disagree, but here there is nothing of the sort—for exactly the reasons identified by this Court in *D'Agostino*, the Supreme Court in *Knight*, and Justice Harlan in *Lathrop*. No reasonable observer would infer that every individual member of the bargaining unit agrees with all of the Union's expressive activities merely from the fact that they are part of a bargaining unit that by majority action selected the Faculty Federation as their representative, and that by law is required to represent the interests of the entire unit without discrimination. Plaintiff's contention that the Union in any way speaks for him as an individual thus has no substance.

**B.**     Similarly, exclusive representation does not require Plaintiff to associate with the Union in any way. To be sure, as the exclusive representative for purposes of collective bargaining, the *Union* is "responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership." Mass. Gen. Laws ch. 150E, § 5. But this

duty of fair representation places obligations only on the Union, not on Plaintiff, and it serves not to *infringe* Plaintiff's associational rights, but to *protect* individual employees—including in particular nonmembers of the union—from discrimination. *See D'Agostino*, 812 F.3d at 244 ("[I]t is not the presence but the absence of a prohibition on discrimination that could well ground a constitutional objection.").

Put differently, the obligations that arise from exclusive representation run only one way: Plaintiff's status as a member of the bargaining unit represented by the Union imposes no burdens whatsoever on him. There is simply, as one district court has put it in rejecting a similar argument, "no authority for the proposition that the imposition of a legal duty on an entity impermissibly burdens the rights of the *beneficiaries* of that duty." *Bierman v. Dayton*, No. 14-3021, 2014 WL 5438505, at *8 (D. Minn. Oct. 22, 2014), *appeal dismissed as moot*, 817 F.3d 1070 (8th Cir. 2016).

Plaintiff cites no case in which a claim of compelled expressive association has been successful where, as is the case here, the plaintiff is not required to do *anything*—not to speak, endorse someone else's speech, pay money, join an organization, or do anything else—and is not prevented from doing any of those things. In short, Plaintiff's claim that exclusive representation imposes a

mandatory association on him would fail even if it were not already foreclosed by binding precedent.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

 /s/ Jacob Karabell
Jacob Karabell
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street N.W., Suite 1000
Washington, DC  20005
(202) 842-2600
jkarabell@bredhoff.com

*Counsel for Appellee UMass Faculty
Federation, Local 1895, American
Federation of Teachers, AFL-CIO*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Brief of Appellee UMass Faculty Federation, Local 1895 complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). The brief is in Times New Roman 14-point typeface. With the exception of those portions excluded by Fed. R. App. P. 32(f), the brief contains 6,260 words.

Dated: November 14, 2022

*/s/ Jacob Karabell*
Jacob Karabell
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street N.W., Suite 1000
Washington, DC  20005
(202) 842-2600
jkarabell@bredhoff.com

*Counsel for Appellee UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that counsel of record for all parties are registered as ECF Filers and that they will be served by the CM/ECF system.

Jeffrey M. Schwab
Reilly Stephens
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, IL 60604
Phone: (312) 637-2280
jschwab@libertyjusticecenter.org

*Attorney for Plaintiff-Appellant*

Matthew L. Fabisch
Fabisch Law
664 Pearl St.
Brockton, MA 02301
Telephone (401) 324-9344
mlfabisch@yahoo.com

*Attorney for Plaintiff-Appellant*

Timothy J. Casey
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2043
Timothy.Casey@mass.gov

*Attorney for the State Defendants*

*/s/ Jacob Karabell*
Jacob Karabell