No. 22-1466

# United States Court of Appeals
## for the First Circuit

RICHARD J. PELTZ-STEELE,
*Plaintiff-Appellant*,

*v.*

UMASS FACULTY FEDERATION, LOCAL 1895, AMERICAN FEDERATION
OF TEACHERS, AFL-CIO; MARTIN MEEHAN, in his official capacity as
President of the University of Massachusetts; MAURA T. HEALEY, in her official
capacity as Attorney General of the Commonwealth of Massachusetts;
MARJORIE F. WITTNER, in her official capacity as a member of the
Commonwealth Employment Relations Board; JOAN ACKERSTEIN, in her
official capacity as a member of the Commonwealth Employment Relations Board;
and KELLY STRONG, in his official capacity as a member of the
Commonwealth Employment Relations Board,
*Defendants-Appellees.*

APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**BRIEF OF THE STATE DEFENDANTS-APPELLEES**

MAURA HEALEY
   *Attorney General of Massachusetts*
Timothy J. Casey, 1st Cir. No. 123932
   *Assistant Attorney General*
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2043
timothy.casey@mass.gov

November 14, 2022

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

ISSUE PRESENTED FOR REVIEW ....................................................... 1

STATEMENT OF THE CASE .................................................................. 1

    Statutory Framework ........................................................................ 1

    Statement of Facts ............................................................................ 4

    Course of Proceedings and Decision Below .................................... 5

SUMMARY OF THE ARGUMENT ......................................................... 7

ARGUMENT ............................................................................................ 9

    I.    Peltz-Steele's Challenge to Exclusive Representation Is
        Squarely Foreclosed by This Court's Decisions in *D'Agostino*
        and *Reisman*, Which Are Based on the Supreme Court's
        Decision in *Knight*. ................................................................. 10

        A.    *Knight* Rejected a Free Speech and Association
             Challenge to Exclusive Representation. ................................... 10

        B.    This Court Has Twice Relied Upon *Knight* to Reject Free
             Speech and Association Challenges to Exclusive
             Representation, in *D'Agostino* and *Reisman*. ........................... 15

        C.    *D'Agostino* and *Reisman* Are Law of the Circuit That
             Compel Rejection of Peltz-Steele's Claims; *Janus* Does
             Not Change That Result. ............................................................ 16

    II.    Exclusive Representation in Massachusetts Does Not Violate
        Peltz-Steele's Constitutional Rights to Free Speech and
        Association. ............................................................................... 22

CONCLUSION ........................................................................................ 27

ADDENDUM

Mass. Gen. Laws ch. 150E, § 2 ...............................................................Add. 1
Mass. Gen. Laws ch. 150E, § 4 ...............................................................Add. 2
Mass. Gen. Laws ch. 150E, § 5 ...............................................................Add. 4
Mass. Gen. Laws ch. 150E, § 6 ...............................................................Add. 5
Mass. Gen. Laws ch. 150E, § 10 .............................................................Add. 6
Mass. Gen. Laws ch. 150E, § 12 .............................................................Add. 8

# TABLE OF AUTHORITIES

## Cases

*Abood v. Detroit Board of Education*,
　　431 U.S. 209 (1977)..................................................................14, 18n

*Adams v. Teamsters Union Local 429*, 2022 WL 186045
　　(3d Cir. Jan. 20, 2022), *cert. denied*,
　　2022 WL 4651460 (U.S. Oct. 3, 2022) ......................................17n

*Akers v. Md. State Educ. Ass'n*, 990 F.3d 375 (4th Cir. 2021)............17n

*Azurity Pharms., Inc. v. Edge Pharma, LLC*,
　　45 F.4th 479 (1st Cir. 2022) ...........................................................9

*Bennett v. AFSCME Council 31*, 991 F.3d 724 (7th Cir.),
　　*cert. denied*, 142 S. Ct. 424 (2021)..............................................17n

*Bierman v. Dayton*, 900 F.3d 570 (8th Cir. 2018), *cert. denied*
　　*sub nom. Bierman v. Walz*, 139 S. Ct. 2043 (2019) ............17n, 18

*Branch v. Commonwealth Employment Relations Bd.*,
　　481 Mass. 810, 120 N.E.3d 1163 (2019),
　　*cert. denied*, 140 S. Ct. 858 (2020)....................................1, 3n, 4, 17n, 20, 21

*City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin
　　Employment Relations Comm'n*, 429 U.S. 167 (1976) .................23

*City of Somerville v. Commonwealth Employment
　　Relations Bd.*, 470 Mass. 563, 24 N.E.3d 552 (2015) ..................21

*City of Worcester v. Labor Relations Comm'n*,
　　438 Mass. 177, 779 N.E.2d 630 (2002)..........................................2

*D'Agostino v. Baker*, 812 F.3d 240 (1st Cir. 2016).........................*passim*

*Harris v.  Quinn*, 573 U.S. 616 (2014) .................................................18n

iii

*Hendrickson v. AFSCME Council 18*, 992 F.3d 950 (10th Cir.),
    *cert. denied*, 142 S. Ct. 423 (2021)...............................................................17n

*Janus v. American Federation of State, County, and Municipal
    Employees, Council 31*, 138 S. Ct. 2448 (2018) ....................................*passim*

*Knight v. Minnesota Community College Faculty Assoc.*,
    460 U.S. 1048 (1983), *aff'g* 571 F. Supp. 1
    (D. Minn. 1982) ...........................................................................................11

*Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012)....................................................18n

*Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991) ........................................23, 24

*Mentele v. Inslee*, 916 F.3d 783 (9th Cir.), *cert. denied sub nom.
    Miller v. Inslee*, 140 S. Ct. 114 (2019) ........................................................17n

*Minnesota State Board for Community Colleges v. Knight*,
    465 U.S. 271 (1984)...............................................................................*passim*

*Ocol v. Chicago Teachers Union*, 982 F.3d 529 (7th Cir. 2020),
    *cert. denied*, 142 S. Ct. 423 (2021)...............................................................17n

*Reisman v. Associated Faculties of the University of Maine*,
    939 F.3d 409 (1st Cir. 2019)..................................................................*passim*

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006)...............................................................................24, 25n

*San Juan Cable LLC v. P.R. Telephone Co.*, 612 F.3d 25
    (1st Cir. 2010) ...................................................................................9, 16, 21

*Squeri v. Mount Ida Coll.*, 954 F.3d 56
    (1st Cir. 2020) ..............................................................................................5n

*Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809
    (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2721 (2021)..................................17n

*Wooley v. Maynard*, 430 U.S. 705 (1977) ................................................................24

**Statutes**

Mass. Gen. Laws ch. 15D, § 17(b) ..........................................................15

Mass. Gen. Laws ch. 150E..............................................2, 13n, 15, 19n, 20, 22, 24

Mass. Gen. Laws ch. 150E, § 2.................................................2, 13n, 22

Mass. Gen. Laws ch. 150E, §§ 4-6 ..........................................................1

Mass. Gen. Laws ch. 150E, § 4.................................................1, 22

Mass. Gen. Laws ch. 150E, § 5.................................................2, 22, 23

Mass. Gen. Laws ch. 150E, § 5, ¶ 2 ..........................................................3n

Mass. Gen. Laws ch. 150E, § 5, ¶ 4 ..........................................................3, 6n

Mass. Gen. Laws ch. 150E, § 6 ..........................................................2

Mass. Gen. Laws ch. 150E, § 10..........................................................13n

Mass. Gen. Laws ch. 150E, § 10(a)(1) ..........................................................2

Mass. Gen. Laws ch. 150E, § 10(a)(3) ..........................................................2

Mass. Gen. Laws ch. 150E, § 10(b)(1) ..........................................................2, 22

Mass. Gen. Laws ch. 150E, § 12.................................................3, 13n

1958 Mass. Acts ch. 460 ..........................................................21

2019 Mass. Acts ch. 73, § 2 ..........................................................3n

v

## **Rules and Regulations**

Fed. R. App. P. 43(c)(2) ................................................................6n

Fed. R. Civ. P. 12(b)(6) ...............................................................1, 9

## **Constitutional Provisions**

U.S. Const. amend. I ...................................................... 1, 6, 7, 9-11, 15, 16, 19n, 24

U.S. Const. amend. XIV ................................................................1, 6, 7, 9

## ISSUE PRESENTED FOR REVIEW

Whether Massachusetts's policy of "exclusive representation" in public-sector collective bargaining, as set forth in Mass. Gen. Laws. ch. 150E, §§ 4-6—under which a labor union selected by a majority of bargaining-unit members for a public-sector employer may act as the exclusive representative for members of the bargaining unit in negotiating a labor contract between the employer and the bargaining unit—violates plaintiff's rights of free speech and association under the First and Fourteenth Amendments to the U.S. Constitution?

## STATEMENT OF THE CASE

This is an appeal from a judgment of the U.S. District Court for the District of Massachusetts (Young, J.) ("District Court") granting the defendants' motions to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

### Statutory Framework

Massachusetts, "like most states, allows public sector employees in a designated bargaining unit to elect a union by majority vote to serve as their exclusive representative in collective bargaining with their government employer." *Branch v. Commonwealth Employment Relations Bd.*, 481 Mass. 810, 811, 120 N.E.3d 1163, 1165 (2019), *cert. denied*, 140 S. Ct. 858 (2020); *see* Mass. Gen. Laws ch. 150E, § 4.  A union selected as exclusive representative "shall have the right to act for and negotiate agreements covering all employees in the unit."  *Id.*

§ 5.  It also has a concomitant duty to represent "the interests of all such employees without discrimination and without regard to employee organization membership." *Id.*

A union's rights as exclusive representative under Chapter 150E extend only to the traditional subjects of collective bargaining—*i.e.*, "wages, hours, standards or productivity and performance, and any other terms and conditions of employment." *Id.* § 6.  Exclusive representation in Massachusetts does not extend to broader policy issues that "by statute, by tradition, or by common sense must be reserved to the sole discretion of the public employer so as to preserve the intended role of the governmental agency and its accountability in the political process"; a matter cannot be subject to mandatory bargaining where "resolution of the issue at the bargaining table is deemed to conflict with perceived requirements of public policy." *City of Worcester v. Labor Relations Comm'n*, 438 Mass. 177, 181, 779 N.E.2d 630, 634 (2002) (citations omitted).

Employees in a bargaining unit have a statutory right to join a union selected as the exclusive representative for their bargaining unit, and a right to *refrain* from joining such a union.  Mass Gen. Laws ch. 150E, § 2.  It is a prohibited labor practice for a public employer or a union to "[i]nterfere, restrain, or coerce" any employee in the exercise of any right guaranteed under Chapter 150E, including the right not to join a union.  *Id.* §§ 10(a)(1), (b)(1); *accord id.* § 10(a)(3) (public

2

employer may not "[d]iscriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization"); *id.* § 12 ("It shall be a prohibited labor practice for an employee organization or its affiliates to discriminate against an employee on the basis of the employee's membership [or] nonmembership … in the employee organization or its affiliates.").

The statute also provides that should employees have grievances under the applicable collective bargaining agreement with their public employer, they may present them directly to the employer without union intervention, though the union has a right to be present during proceedings on the grievance, and any resolution of the grievance may not be inconsistent with the terms of the collective bargaining agreement. *Id.* § 5, ¶ 4.[1]

---

[1] Previously, bargaining-unit members who did not join the union could be required to pay "agency fees" to cover the cost of collective-bargaining activities by the union. *See* Mass. Gen. Laws ch. 150E, § 12. After provisions like these were deemed unconstitutional in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), however, the Commonwealth—through the Attorney General and the Department of Labor Relations—directed unions and public employers not to enforce this provision. *Branch v. Commonwealth Employment Relations Bd.*, 481 Mass. 810, 815-19, 120 N.E.3d 1163, 1168-71 (2019). Subsequently, the statute was amended to provide that, although non-union members of the bargaining unit could choose to be represented by the union during the grievance process, the union could require that the employee reimburse the union for the reasonable costs of representation during the grievance process, and that the union would have no further obligation to a unit member who refused to pay such costs. Mass. Gen. Laws ch. 150E, § 5, ¶ 2, added by 2019 Mass. Acts ch. 73, § 2.

Thus structured, exclusive representation is considered a "basic building block of labor law policy" in Massachusetts. *Branch*, 481 Mass. at 819-20, 120 N.E.3d at 1172 (citation omitted).

## Statement of Facts

Plaintiff Richard Peltz-Steele is a law professor at the University of Massachusetts School of Law at Dartmouth ("University"). Appendix ("A.") 4, ¶ 14 (Complaint). He is a member of a bargaining unit for which the defendant, UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO ("Union"), has been certified as the exclusive representative. A.3-4, ¶¶ 11, 15. Peltz-Steele is not, however, a member of the Union and "does not wish to associate with the [Union], including having the [Union] serve as his exclusive bargaining representative." A.2, ¶ 4; A.4, ¶ 16.

Peltz-Steele's lawsuit arises from his dissatisfaction with the terms of a September 2020 Memorandum of Agreement ("MOA") between the University and the Union. A.4-5, ¶¶ 21-24; A.9, ¶ 48. As the result of financial losses from the COVID-19 pandemic, in September 2020 the University initiated negotiations with the Union regarding across-the-board staff salary reductions, without which the University stated it would have to lay off some "80+ employees." A.4, ¶ 19. In the resulting MOA between the University and the Union, the University agreed it would not lay off any bargaining-unit employee until at least July 1, 2021.

MOA, ¶ 13 (District Court ECF No. 23-2).[2]  In exchange, the Union agreed to a progressive salary reduction structure, in which there would be no reduction of the first $30,000 of each employee's regular salary and then increasing salary reductions for each $5,000 in excess of this threshold.  A.5, ¶ 22; MOA, ¶ 22. Peltz-Steele complains that the Union "unilaterally volunteered Plaintiff for a more significant salary reduction that he would otherwise have been subject to," A.9, ¶ 48, and that it failed to consider other options, including "a reduction in redundant administrative staff, extended voluntary furloughs, intangible incentives such as voluntary course releases," and tapping into the University's "rainy day fund."  A.4, ¶ 21.

## <u>Course of Proceedings and Decision Below</u>

Peltz-Steele filed this complaint in September 2021, naming as defendants University President Martin Meehan; Massachusetts Attorney General Maura Healey; the members of the Commonwealth Employment Relations Board—

---

[2] Although not included in the Appendix, the MOA is reprinted at Exhibit B to the Union's memorandum of law in support of its motion to dismiss.  *See* District Court ECF Nos. 23, 23-2.  Because the MOA is quoted and relied upon by Peltz-Steele in framing his complaint, *see, e.g.*, A.4-5, ¶¶ 17, 22, it may be considered by this Court in assessing whether the complaint was properly dismissed.  *E.g.*, *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 66 (1st Cir. 2020) (court may consider documents "sufficiently referred to in the complaint" on motion to dismiss).

Marjorie Wittner, Kelly Strong, and Joan Ackerstein[3] (collectively, the "state defendants"); and the Union. *See generally* A.1-13 (Complaint). The complaint originally contained two counts. Count I asserted that Massachusetts's system of exclusive representation violated his First and Fourteenth Amendment rights of free speech and association. A.8-10, ¶¶ 41-54. Count II, which Peltz-Steele later voluntarily dismissed, asserted that the defendants improperly barred him from presenting a grievance to his employer without the consent of the Union. A.10-12, ¶¶ 55-63.[4]

After the Union and the state defendants filed separate motions to dismiss, the District Court held a hearing on the motions, at which it dismissed the complaint from the bench. *See* A.16-22 (transcript of hearing on motions to dismiss). The District Court later issued a written decision further explaining its reasons for dismissing the complaint.

---

[3] Ms. Ackerstein is no longer a member of the Board. Once a successor takes office, that person will be automatically substituted as a party. Fed. R. App. P. 43(c)(2).

[4] Peltz-Steele voluntarily dismissed Count II at the hearing on the motions to dismiss after the defendants asserted in their motions to dismiss that, both as a matter of a state law, Mass. Gen. Laws ch. 150E, § 5, ¶ 4, and the collective bargaining agreement between the Union and the University, Peltz-Steele had the right to present a grievance to his employer without the Union's prior approval. *See* A.19 (transcript of hearing on motion to dismiss); *see also*, *e.g.*, District Court ECF No. 25, at 5-6, 12-14 (state defendants' memorandum in support of their motion to dismiss).

As the District Court elaborated, Peltz-Steele's challenge to exclusive

representation is squarely foreclosed by the Supreme Court's decision in

*Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984),

and by this Court's decisions in *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir. 2016),

and *Reisman v. Associated Faculties of the University of Maine*, 939 F.3d 409 (1st

Cir. 2019). *See* Decision 11-12.[5]  The District Court further noted that Peltz-

Steele's efforts to distinguish these cases were unavailing, and that nothing in the

Supreme Court's decision in *Janus v. American Federation of State, County, and*

*Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), dictated a different

result.  Decision 12-26.  The District Court concluded by noting that both

precedent and "commonsense understandings of representative relationships,"

including those in our political system, compelled dismissal of the complaint.

Decision 27-28.

## **SUMMARY OF THE ARGUMENT**

This Court has, on two previous occasions, rejected effectively identical

challenges to exclusive representation, relying upon the Supreme Court's decision

in *Knight* to conclude, in *D'Agostino* and *Reisman*, that exclusive representation

does not violate the First or Fourteenth Amendment rights of non-union

---

[5] The District Court Decision is reprinted in the Addendum to Appellant's Opening
Brief.  *See* Add. 1-28.  It is cited in this brief as "Decision [page number]."

employees.  Straightforward application of *D'Agostino* and *Reisman* as law of the circuit, therefore, compels rejection of Peltz-Steele's claim here.  While Peltz-Steele asserts that the Supreme Court's decision in *Janus*—which invalidated "agency fees" charged by unions to non-union employees to support unions' collective bargaining activities—contravenes and therefore warrants disregarding this Court's precedents, he is mistaken.  This Court has already revisited exclusive representation after *Janus*, holding in *Reisman* (as has every other circuit to consider the issue) that *Janus* did not disturb the constitutionality of exclusive representation, a point that *Janus* itself made clear.

Even if this Court were required to go beyond *D'Agostino* and *Reisman*—which it is not—it should affirm the judgment below.  Peltz-Steele remains free not to join the Union and to speak out as he wishes regarding employment and other matters, including in opposition to positions taken by the Union.  He can prosecute a grievance under the collective bargaining agreement without the Union's involvement (though the Union has a right to be present and any resolution cannot be inconsistent with the agreement).  Reasonable observers would not attribute the Union's speech to Peltz-Steele, given the legal nature of the exclusive representation relationship.  And finally, as the District Court observed, exclusive representation simply mirrors, in the workplace, our political system of representative government, under which officials elected by a majority of

8

citizens—including officials we did not vote for and whose positions we oppose—
have the authority, by virtue of their election, to make decisions that bind us.  Just
as our system of representative government does not inflict impermissible
associational injury, neither does exclusive representation violate the First or
Fourteenth Amendment.

## <u>ARGUMENT</u>

On de novo review of the District Court's dismissal of the case under Fed.
R. Civ. P. 12(b)(6), *see Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479,
489 (1st Cir. 2022), this Court should affirm the judgment because, as the District
Court correctly explained, rejection of Peltz-Steele's claims is compelled by the
Supreme Court's decision in *Knight*, and by this Court's decisions in *D'Agostino*
and *Reisman*.  Indeed, simple application of the law of the circuit doctrine compels
affirming the judgment below, as this Court does not overrule one of its prior panel
decisions absent extraordinary circumstances not present here.  *E.g.*, *San Juan
Cable LLC v. P.R. Telephone Co.*, 612 F.3d 25, 33 (1st Cir. 2010).  Although
Peltz-Steele asserts that the Supreme Court's decision is *Janus* is such a special
circumstance, he is wrong, as this Court in *Reisman* specifically addressed *Janus*
and concluded that it did not alter the constitutionality of exclusive representation.
*Janus* itself made this point clear.  And none of Peltz-Steele's other arguments

detract from the conclusion that exclusive representation does not violate his speech or associational rights.

I.    **Peltz-Steele's Challenge to Exclusive Representation Is Squarely Foreclosed by This Court's Decisions in *D'Agostino* and *Reisman*, Which Are Based on the Supreme Court's Decision in *Knight*.**

A.    ***Knight* Rejected a Free Speech and Association Challenge to Exclusive Representation.**

As the District Court correctly observed, "[w]hile the precise claims made in *Knight* may differ slightly from the present case, its holding is unambiguous: exclusive representation by public-sector labor unions does not violate the speech or associational rights of non-union members." Decision 17. In *Knight*, the Supreme Court rejected the very same theory advanced by Peltz-Steele here—namely, that a collective bargaining system in which a union acts as an exclusive representative for a group of public employees violates a dissenting employee's First Amendment rights of association and speech.

In that case, community college faculty members—public employees of a state education system—who chose not to join the union sought to challenge the union's right of exclusive representation in two contexts: (i) a "meet and negotiate" process requiring the public employer to negotiate with the union regarding the "terms and conditions of employment"—*i.e.*, the traditional subjects of "mandatory" collective bargaining; and (ii) a "meet and confer" process requiring the employer to confer with the union on "employment-related" policy

issues beyond the scope of traditional collective bargaining. *Knight*, 465 U.S. at 274.

As to the "meet and negotiate" process regarding employment terms, the Supreme Court summarily affirmed the portion of the lower court's decision upholding exclusive representation against a First Amendment challenge. *Knight v. Minnesota Community College Faculty Assoc.*, 460 U.S. 1048 (1983) (summary affirmance), *aff'g* 571 F. Supp. 1, 3-7 (D. Minn. 1982) (lower court decision); *see also Knight*, 465 U.S. at 279 (explaining that its prior summary affirmance "rejected the constitutional attack on [the Minnesota statute's] restriction to the exclusive representative of participation in the 'meet and negotiate' process").

As to the "meet and confer" process regarding broader policy issues, the Court issued a full opinion, holding that exclusive representation in that context also failed to implicate First Amendment associational or speech rights, because "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Knight*, 465 U.S. at 283. By limiting participation in "meet and confer" sessions to the exclusive representative, the state had "simply restricted the class of persons to whom it will listen in its making of policy." *Id.* at 282. The Court concluded that the instructors had no constitutional right to be heard by, or to negotiate individually with, their government employer. *Id.* at 283. The Court also observed that the challenged

11

system of exclusive representation preserved nonunion members' freedom to

"form whatever advocacy groups they like" and in no way inhibited their access to

public forums. *Id.* at 280-83, 286-87, 289. Thus, the Court held that the state had

not restrained the instructors' "freedom to speak … or their freedom to associate or

not to associate with whom they please, including the exclusive representative."

*Id.* at 288.

Peltz-Steele's efforts to distinguish *Knight* are unavailing. First, he claims

that *Knight* addressed exclusive representation only with respect to policy issues,

and not the terms and conditions of employment. Appellant's Opening Brief

("Br.") at 2. This is wrong. True, the full decision in *Knight* addressed exclusive

representation with respect to broader policy discussions with the university. But

as noted above, the Supreme Court had already summarily affirmed the portion of

the lower court's decision upholding exclusive representation with respect to the

traditional subjects of collective bargaining, *i.e.*, the terms and conditions of

employment. *See Knight*, 465 U.S. at 279. And, as this Court noted in

*D'Agostino*, even if the Supreme Court had addressed only exclusive

representation with respect to policy matters in *Knight*, that decision would have

supported, *a fortiori*, rejection of a similar challenge regarding the smaller universe

of matters comprised by traditional "bargaining representation." 812 F.3d at 243.

Next, Peltz-Steele suggests that *Knight* held only that the government is not required to grant anyone—including employees who are not members of the union—a formal audience for their views. Br. 22. He asserts that "*Knight* did not decide whether such employees can be forced to associate with the union." *Id.* This is an unduly narrow reading of *Knight*. That case went beyond the question whether the government had any obligation to listen to the views of non-union employees, *see* 465 U.S. at 283-88, to conclude that exclusive representation did not violate the speech or associational rights of non-union employees, *see id.* at 288-90. It rejected the constitutional challenge to exclusive representation for several reasons, including that employees are not required to join the union,[6] but may instead associate or not associate in any manner they please; that employees

---

[6] Peltz-Steele repeatedly states that exclusive representation compels him to associate with the Union and its positions, *e.g.*, Br. 22, 24, without acknowledging that, under Chapter 150E, he is not required to join the Union, and it is in fact a prohibited labor practice for his employer or the Union to interfere, restrain, or coerce the exercise of his right not to join the Union. Mass. Gen. Laws ch. 150E, §§ 2, 10, 12. So the allegedly improperly compelled association must stem from either the fact that (1) he is bound by the agreement reached between the University and the Union, or (2) others will perceive that he agrees with and endorses the positions taken by the Union. As to the former, if this constituted impermissible associational harm, then our entire system of representative government would inflict associational harm every time an elected representative for whom we did not vote and with whom we disagree passed a law that binds us. As to the latter, courts including the Supreme Court have repeatedly rejected the notion that exclusive representation and other forms of mandatory association create the appearance than an individual agrees with the positions of the representative. *See* page 24 & note 10, below.

are free to speak out in any manner they wish, including in opposition to the positions raised by the union; and that employers negotiate with unions with the understanding that not all employees agree with the unions' positions. *Id.* at 276, 288-90.

Finally, Peltz-Steele suggests that *Knight* had no occasion to decide whether exclusive representation imposed an impermissible mandatory association on employees, since the Supreme Court had previously decided that question in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and it was thus unnecessary for the Court in *Knight* to "revisit" the issue. Br. 23-24. Because *Abood* was overruled by *Janus*, Peltz-Steele presumably makes this argument to suggest that *Knight*, and the decisions of this Court relying upon it, are open to being reconsidered here. Once again, however, Peltz-Steele is mistaken. The holding of *Abood* was that while non-union employees could not be required to pay dues to support unions' political activities, they could be required to pay fees to support unions' collective bargaining activities. 431 U.S. at 217-37. *Abood* was thus about the constitutional limits on requiring employees to provide *financial* support for unions. *See id.* In contrast, *Knight* concerned whether exclusive representation itself was constitutional, without regard to the issue of compulsory financial support for unions. *See* 465 U.S at 288-90, 291 n.13. Because *Abood* (and *Janus*) concerned the issue of financial support for unions as compelled

14

speech, whereas *Knight* concerned whether exclusive representation violates the speech and associational rights of non-union employees, *Knight* is the controlling decision here.

> ### B. This Court Has Twice Relied Upon *Knight* to Reject Free Speech and Association Challenges to Exclusive Representation, in *D'Agostino* and *Reisman*.

Following *Knight*, this Court has twice rejected similar First Amendment challenges to exclusive representation. First, in *D'Agostino*, Massachusetts child-care providers challenged a statute (Mass. Gen. Laws ch. 15D, § 17(b)), granting to that class of employees the protections of Mass. Gen. Laws ch. 150E, the "statutory scheme that authorizes the selection of an exclusive bargaining agent to agree on terms that affect their relationships with their clients and the government." 812 F.3d at 242. This Court rejected that challenge because *Knight* made clear that "exclusive bargaining representation by a democratically selected union does not, without more, violate the right of free association on the part of dissenting non-union members of the bargaining unit." *Id.* at 244. This Court similarly rejected the child-care providers' claim of compelled speech, reasoning that the "freedom of the [nonunion plaintiffs] to speak out publicly on any union position … counters the claim that there is an unacceptable risk the union speech will be attributed to them contrary to their own views." *Id.* at 243-44 (citing *Knight*, 465 U.S. at 288).

More recently, in 2019, this Court rejected a state university professor's attempt to invalidate, on First Amendment grounds, a Maine statute that governs collective bargaining between the state's university system and its faculty. *Reisman*, 939 F.3d at 410. The Court concluded that both *D'Agostino* and *Knight* disposed of the professor's claimed violations of free speech and association. *Id.* at 412-14. Thus, in *Reisman*, this Court re-affirmed that, under *Knight*, there is "no violation of associational rights by an exclusive bargaining agent speaking for their entire bargaining unit when dealing with the state even outside collective bargaining." *Id.* at 414 (quoting *D'Agostino*, 812 F.3d at 243).

### C. *D'Agostino* and *Reisman* Are Law of the Circuit That Compel Rejection of Peltz-Steele's Claims; *Janus* Does Not Change That Result.

This Court need go no further than *D'Agostino* and *Reisman*, which applied *Knight*. Those cases are law of the circuit, and *Janus* does not provide a basis for a subsequent panel to overrule them.

The "law of the circuit" rule is a "subset" of stare decisis. *San Juan Cable*, 612 F.3d at 33. It is "one of the building blocks on which the federal judicial system rests." *Id.* Under the rule, "newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point." *Id.* Although the rule is not "immutable," the exceptions are "extremely narrow" and their incidence is "hens-teeth-rare." *Id.* Notably, although one such exception

16

would apply when a "subsequently announced … Supreme Court opinion directly on point" "contradict[s]" a prior panel decision, "a previously decided [Supreme Court] case not overlooked by the original panel … cannot trigger an exception to the law of the circuit rule." *Id.* at 34.

Here, it is enough to observe that *Janus* was "not overlooked" by this Court. *Id.* Instead, this Court addressed *Janus* in *Reisman*, and concluded—as has every other circuit court to consider the issue—that *Janus* did not disturb *Knight* or otherwise undermine the constitutionality of exclusive representation. *Reisman*, 939 F.3d at 414 (considering *Janus* and concluding that "we cannot say that [it] provides us with a basis for disregarding *D'Agostino*").[7]

Even if *Reisman* did not squarely address *Janus*, however, it is clear that *Janus* did not disturb *Knight* or the constitutionality of exclusive representation, for several reasons. To begin, the Court in *Janus* did not mention *Knight* even once,

---

[7] *Accord Adams v. Teamsters Union Local 429*, 2022 WL 186045, at *3 (3d Cir. Jan. 20, 2022) (non-precedential), *cert. denied*, 2022 WL 4651460 (U.S. Oct. 3, 2022); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 968-70 (10th Cir.), *cert. denied*, 142 S. Ct. 423 (2021); *Bennett v. AFSCME Council 31*, 991 F.3d 724, 732-35 (7th Cir.), *cert. denied*, 142 S. Ct. 424 (2021); *Akers v. Md. State Educ. Ass'n*, 990 F.3d 375, 382 n.3 (4th Cir. 2021); *Ocol v. Chicago Teachers Union*, 982 F.3d 529, 532-33 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 423 (2021); *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2721 (2021); *Mentele v. Inslee*, 916 F.3d 783 (9th Cir.), *cert. denied sub nom. Miller v. Inslee*, 140 S. Ct. 114 (2019); *Bierman v. Dayton*, 900 F.3d 570 (8th Cir. 2018), *cert. denied sub nom. Bierman v. Walz*, 139 S. Ct. 2043 (2019); *see also Branch*, 481 Mass. at 819-26, 120 N.E.3d at 1171-76, *cert. denied*, 140 S. Ct. 858.

let alone purport to cast doubt on the constitutionality of exclusive representation as it was upheld in *Knight*. *See Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018) (relying upon *Knight* in rejecting challenge to exclusive representation after *Janus* was decided, in part because *Janus* "never mentioned *Knight*").[8]

But the Court in *Janus* did more than simply decline to mention *Knight*. To the contrary, several aspects of its opinion affirmatively support the constitutionality of exclusive representation. True, the Court observed that exclusive representation is "a significant impingement on associational freedoms that would not be tolerated in other contexts." 138 S. Ct. at 2478. But the text immediately before and after that passage provides important context. There the Court observed:

> It is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts. We simply draw the line at allowing the government to go further still and require all employees to support the union [financially] irrespective of whether they share its views.

138 S. Ct. at 2478.

---

[8] This stands in stark contrast to the decision that *was* overruled by *Janus*, *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which the Supreme Court criticized in several decisions leading up to *Janus*. *See Harris v. Quinn*, 573 U.S. 616, 635-38 (2014); *Knox v. SEIU, Local 1000*, 567 U.S. 298, 310-14 (2012). Had the Supreme Court intended to overrule or at least limit *Knight* the way it overruled *Abood*, one would have expected the Court to at least mention *Knight* at some point in its decision in *Janus*.

18

At least four other aspects of *Janus* support the constitutionality of exclusive representation.  First, the Court acknowledged that a state's interest in "labor peace"—defined as the "avoidance of the conflict and disruption" in the workplace that would occur "if the employees in a unit were represented by more than one union"—is "compelling."  *Id.* at 2465.[9]  But the Court concluded that the payment of agency fees was not necessary to achieve this compelling interest, and that avoiding "free riders" who might benefit from union services without paying fees is not a similarly compelling interest.  *Id.* at 2465-66.  A central feature of the Court's decision, then, was its de-coupling of labor peace and exclusive representation as constitutionally permissible ends and means, respectively, from constitutionally impermissible agency fees in the interest of avoiding free riders.

---

[9] Peltz-Steele argues that the labor-peace interest recognized by the Court is *Janus* is "particularly inapplicable" to him "because he does not seek to introduce a competing union into the bargaining mix but only to ensure that the Union does not speak on his behalf."  Br. 18.  But to the extent Peltz-Steele wishes to negotiate individually with his employer over the terms and conditions of his employment, it would introduce even more disruption and inefficiency for the employer to have to negotiate with each employee individually than to have to negotiate with competing unions each representing groups of employees.  It is the very same kind of disruption that the labor peace interest, and exclusive representation, are designed to avoid.  The only alternative would be for the employer to set the terms and conditions of employment unilaterally, without any employee input at all.  But Chapter 150E attempts to give employees more of a say in their employment terms, while still allowing the public employer to conduct negotiations with a single exclusive representative.  And, as explained further below, merely because the Union negotiates a labor contract with the University on behalf of Peltz-Steele's bargaining unit does not mean that the Union "speak[s] on his behalf" in a way that violates the First Amendment.

*Id.*; *see also id.* at 2480 (rejecting assumption that these principles are "inextricably linked").

Second, the Court cited with approval the experience of the federal government, where "a union chosen by majority vote is designated as the exclusive representative of all the employees, but federal law does not permit agency fees." *Id.* at 2466.  To the Court, this meant that the compelling interest in labor peace "can readily be achieved through means significantly less restrictive of associational freedoms than the assessment of agency fees."  *Id.* (citation and internal quotation marks omitted).  As it happens, this is exactly the arrangement dictated by Chapter 150E after *Janus*.  *See Branch*, 481 Mass. at 815-20, 120 N.E.3d at 1168-72.

Third, the Court noted that a union as exclusive representative could permissibly require nonmembers to pay the union for representing them during grievance proceedings, or could simply deny them representation during such proceedings altogether, and either approach would be more narrowly tailored than imposing agency fees.  *Id.* at 2468-69 & n.6.  Massachusetts in fact adopted these alternatives after *Janus*.  *See* note 1, above.  But such alternatives would obviously be impermissible if exclusive representation itself constituted unacceptable associational injury.

Fourth and finally, in rejecting a reliance-based argument for upholding agency fees, the Court noted that its decision would *not* require an "extensive legislative response" by states: "States can keep their labor-relations systems *exactly as they are*—only they cannot force nonmembers to subsidize public-sector unions." *Id.* at 2485 n.27 (emphasis added). The same would not be true of a decision that exclusive representation is unconstitutional: such a ruling would destroy a "basic building block of labor law policy" in Massachusetts, *Branch*, 481 Mass. at 819-20, 120 N.E.3d at 1172 (citation omitted), one that has been in place in public-sector bargaining in Massachusetts for over 60 years, *see* 1958 Mass. Acts ch. 460, and in the private sector under federal law since the National Labor Relations Act was enacted in 1935. *See City of Somerville v. Commonwealth Employment Relations Bd.*, 470 Mass. 563, 568-69, 24 N.E.3d 552, 556-67 (2015). It would be impossible for employers, public and private, to respond to a ruling that exclusive representation is unconstitutional without a substantial and complex legislative reordering, one that would need to address whether and how (if at all) employees can organize and negotiate with their employers over the terms and conditions of their employment.

It is therefore clear that nothing in *Janus* "contradicted" *Knight* or this Court's decisions in *D'Agostino* and *Reisman* applying *Knight*. *San Juan Cable*,

612 F.3d at 33.  Accordingly, this Court need go no further than applying

*D'Agostino* and *Reisman* as law of the circuit to affirm the judgment.

## II.    Exclusive Representation in Massachusetts Does Not Violate Peltz-Steele's Constitutional Rights to Free Speech and Association.

Although it is not necessary for this Court to go beyond its prior decisions in

*D'Agostino* and *Reisman*, for the sake of completeness the state defendants

reiterate here the reasons why exclusive representation, as it has been implemented

in Massachusetts, does not violate the speech or associational rights of Peltz-Steele

or any other public-sector employee.

Chapter 150E creates a democratic process whereby employees have the

right to participate in the selection of a union at the creation of a bargaining unit.

Mass. Gen. Laws ch. 150E, § 4.  If they are dissatisfied with the particular union

selected (or with being represented by any union), they remain free not to join the

union, *id.* § 2.  Once selected, a union is under a statutory duty of fair

representation, to represent all employees in the bargaining unit "without

discrimination and without regard to employee organization membership" in

negotiating a collective bargaining agreement and in representing employees under

the agreement.  *Id.* § 5.  It is a prohibited practice for a union to "[i]nterfere,

restrain, or coerce any … employee in the exercise of any right guaranteed under

this chapter," including the right not to join the union under § 2.  *Id.* § 10(b)(1).

Moreover, should an employee have a grievance with her public employer, she

22

may present it directly to the employer without union intervention, though the union has a right to be present and any resolution of the grievance may not be inconsistent with the terms of the collective bargaining agreement. *Id.* § 5.

Public-sector employees thus remain free to disassociate themselves from the unions representing their bargaining units, and may speak out regarding the terms and conditions of their employment, including in opposition to the unions' positions. *See Knight*, 465 U.S. at 288 ("The state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative. Nor has the state attempted to suppress any ideas."); *D'Agostino*, 812 F.3d at 243 (no infringement of child-care providers' speech or associational rights because providers could "speak out publicly on any subject and were free to associate themselves together outside the union however they might desire"); *see also Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 521 (1991) ("Individual employees are free to petition their neighbors and government in opposition to the union which represents them in the workplace."); *City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 176 n.10 (1976) ("[N]o one would question the absolute right of the nonunion [employees] to consult among themselves, hold meetings, reduce their views to writing, and

communicate those views to the public generally … [or] directly to the [government].").

Moreover, as the District Court observed, no one would assume that Peltz-Steele or other employees agree with or endorse the positions taken by the unions merely because the unions represent the entire bargaining unit in collective bargaining pursuant to Chapter 150E.  Decision 26.  *See Knight*, 465 U.S. at 276 (public employer negotiates with union understanding that not all bargaining-unit members agree with the union's positions); *Lehnert*, 500 U.S. at 521 ("[W]orker and union cannot be said to speak with one voice."); *see also Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 64-66 (2006) (rejecting speech and associational challenges to rule requiring law schools to host military recruiters on campus, in part because no observer would reasonably conclude that merely hosting recruiters on campus represented the law schools' endorsement of the military's position on homosexuality).  *Contrast Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (violation of First Amendment for state to require driver to affix to his automobile a license plate containing an ideological message with which the driver disagreed, in part because it creates the appearance that the driver endorses the message).[10]

---

[10] Peltz-Steele argues that, because the exclusive representation relationship is mandated by law and not a product of voluntary choice, it enhances the risk that

(footnote continued)

Finally, as the District Court appropriately observed, exclusive representation in the workplace is no different from our system of majority-rule-based representation in our political process, under which we are sometimes represented by officials for whom we did not vote, and whose positions we do not support.  Decision 27-28.  But because such officials were elected by a majority of our peers, they have the power to make laws and other decisions that bind us.  *Id.*  This arrangement does not inflict associational injury, since dissenters remain free to speak out and associate (or not) as they please, and no one would assume that every voter agrees with every position taken by their elected representatives.  *Id.*  As the Supreme Court noted in *Knight*, while employees may feel some pressure to join the exclusive representative in order to participate in discussions with the government, that is "no different from the pressure to join a majority party that persons in the minority always feel.  Such pressure is inherent in our system of

---

others will perceive that he agrees with the Union's positions.  Br. 31.  But this has it exactly backwards.  When a relationship is compelled by law, others are less likely to believe that the person subjected to the relationship agrees with the all the positions taken by the representative.  *See D'Agostino*, 812 F.3d at 244 (Exclusive representation relationship "is one that is clearly imposed by law, not by any choice on a dissenter's part, and … it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority."); *see also Rumsfeld*, 547 U.S. at 64-66 (observers unlikely to believe that law schools endorse military's position on homosexuality merely by hosting military recruiters on campus, where doing so was required by law).

government; it does not create an unconstitutional inhibition on associational freedom."  465 U.S. at 290.

Just as our system of representative government does not inflict associational injury, neither does Massachusetts's system of exclusive representation in collective bargaining for public employees.

## **CONCLUSION**

For the reasons set forth above, the judgment of the District Court should be affirmed.

Respectfully submitted,

MARTIN MEEHAN, in his official capacity as President of the University of Massachusetts; MAURA T. HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts; MARJORIE F. WITTNER, in her official capacity as a member of the Commonwealth Employment Relations Board; JOAN ACKERMAN, in her official capacity as a member of the Commonwealth Employment Relations Board; and KELLY STRONG, in his official capacity as a member of the Commonwealth Employment Relations Board,

By their attorney,

*/s/ Timothy J. Casey*
Timothy J. Casey (First Circuit No. 123832)
Assistant Attorney General
Government Bureau
Office of the Attorney General of Massachusetts
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2043
timothy.casey@mass.gov

November 14, 2022

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I hereby certify that:

1.     This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because the brief contains 6,292 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with 14-point, Times New Roman font.

*/s/ Timothy J. Casey*
Attorney for the State Appellees
November 14, 2022

# ADDENDUM

Mass. Gen. Laws ch. 150E, § 2.........................................................................Add. 1

Mass. Gen. Laws ch. 150E, § 4.........................................................................Add. 2

Mass. Gen. Laws ch. 150E, § 5.........................................................................Add. 4

Mass. Gen. Laws ch. 150E, § 6.........................................................................Add. 5

Mass. Gen. Laws ch. 150E, § 10.......................................................................Add. 6

Mass. Gen. Laws ch. 150E, § 12.......................................................................Add. 8

Massachusetts General Laws Annotated
  Part I. Administration of the Government (Ch. 1-182)
    Title XXI. Labor and Industries (Ch. 149-154)
      Chapter 150E. Labor Relations: Public Employees (Refs & Annos)

M.G.L.A. 150E § 2

§ 2. Collective bargaining; self organization

Currentness

Employees shall have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing on questions of wages, hours, and other terms and conditions of employment, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion. An employee shall have the right to refrain from any or all of such activities, except to the extent of making such payment of service fees to an exclusive representative as provided in section twelve.

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

Add. 1

Massachusetts General Laws Annotated
  Part I. Administration of the Government (Ch. 1-182)
    Title XXI. Labor and Industries (Ch. 149-154)
      Chapter 150E. Labor Relations: Public Employees (Refs & Annos)

M.G.L.A. 150E § 4

§ 4. Exclusive representative; hearing; election; stipulation; certification; review;
verification of evidence of written majority authorization

Effective: December 26, 2007

Currentness

Public employers may recognize an employee organization designated by the majority of the employees in an appropriate bargaining unit as the exclusive representative of all the employees in such unit for the purpose of collective bargaining. All notices relative to a representation petition and all elections shall be posted at the request of the commission ten days prior to a hearing in a conspicuous place where the affected employees are employed.

The commission, upon receipt of an employer's petition alleging that one or more employee organizations claims to represent a substantial number of the employees in a bargaining unit, or upon receipt of an employee organization's petition that a substantial number of the employees in a bargaining unit wish to be represented by the petitioner, or upon receipt of a petition filed by or on behalf of a substantial number of the employees in a unit alleging that the exclusive representative therefor no longer represents a majority of the employees therein, shall investigate, and if it has reasonable cause to believe that a substantial question of representation exists, shall provide for an appropriate hearing upon due notice. If, after hearing, the commission finds that there is a controversy concerning the representation of employees, it shall direct an election by secret ballot or shall use any other suitable method to determine whether, or by which employee organization the employees in an appropriate unit desire to be represented, and shall certify any employee organization which received a majority of the votes in such election as the exclusive representative of such employees.

Except for good cause no election shall be directed by the commission in an appropriate bargaining unit within which a valid election has been held in the preceding twelve months, or a valid collective bargaining agreement is in effect. The commission shall by its rules provide an

Add. 2

appropriate period prior to the expiration of such agreements when certification or decertification petitions may be filed.

Nothing in this section shall be construed to prohibit a stipulation, in accordance with regulations of the commission, by an employer and an employee organization for the waiving of hearing and the conducting of a consent election by the commission for the purpose of determining a controversy concerning the representation of employees.

Any hearing under this section may be, when so determined by the commission, conducted by a member or agent of the commission. The decisions and determinations of such member or agent shall be final and binding unless, within ten days after notice thereof, any party requests a review by the full commission. If a review is requested, the member or agent shall file with the commission and with the parties a written statement of the case. In addition any party may, within ten days from the receipt of such statement, file a supplementary statement with the commission. A review by the commission shall be made upon such statement of the case by the member or agent and upon such supplementary statements filed by the parties, if any, together with such other evidence as the commission may require.

Notwithstanding any other provision of this section, the commission shall certify and the public employer shall recognize as the exclusive representative for the purpose of collective bargaining of all the employees in the bargaining unit an employee organization which has received a written majority authorization, but this shall apply only when no other employee organization has been and currently is lawfully recognized as the exclusive representative of the employees in the appropriate bargaining unit. Whenever an employee organization proffers evidence that it has received a written majority authorization, the employee organization and the public employer shall agree upon a neutral to conduct a confidential inspection of the evidence of a written majority authorization. If within 10 days the employee organization and the public employer do not agree upon a neutral, the commission shall act as the neutral. The neutral shall verify the employee organization's majority support within the appropriate bargaining unit and report the results of its inspection in writing to the parties and, if the verification was conducted by an agreed neutral, to the commission, which shall in turn certify the results to the parties in writing. The commission shall establish rules and procedures for the prompt verification of evidence of a written majority authorization, which rules shall include safeguards to protect the privacy of individual employee choice, and which shall further provide that, absent exceptional cause, the verification procedure shall not last longer than 30 days after the appointment of the neutral or after the assumption by the commission of the duties of the neutral.

Massachusetts General Laws Annotated
  Part I. Administration of the Government (Ch. 1-182)
    Title XXI. Labor and Industries (Ch. 149-154)
      Chapter 150E. Labor Relations: Public Employees (Refs & Annos)

M.G.L.A. 150E § 5

§ 5. Exclusive representative; powers and duties; payment of cost and fees by non-member; grievances

Effective: September 19, 2019

Currentness

The exclusive representative shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership.

The exclusive representative may require a non-member to pay for the reasonable costs and fees, including arbitrator fees and related attorney fees, for grieving or arbitrating a matter arising under an agreement negotiated pursuant to this section and brought at the non-member's request. The exclusive representative may require a non-member to pay any anticipated proportional costs and fees prior to a grievance or arbitration hearing. Failure to pay costs and fees shall relieve the exclusive representative of further responsibility to the non-member regarding the matter.

An exclusive representative's duty of fair representation to a public employee who is in the bargaining unit shall be limited to the negotiation and enforcement of the terms of agreements with the public employer. The laws of the commonwealth shall not prohibit an employee organization from providing only to its members legal, economic or job-related services or benefits outside of the collective bargaining agreement.

An employee may present a grievance to his employer and have such grievance heard without intervention by the exclusive representative of the employee organization representing said employee, provided that the exclusive representative is afforded the opportunity to be present at such conferences and that any adjustment made shall not be inconsistent with the terms of an agreement then in effect between the employer and the exclusive representative.

Massachusetts General Laws Annotated
  Part I. Administration of the Government (Ch. 1-182)
    Title XXI. Labor and Industries (Ch. 149-154)
      Chapter 150E. Labor Relations: Public Employees (Refs & Annos)

M.G.L.A. 150E § 6

§ 6. Negotiations; meetings

Currentness

The employer and the exclusive representative shall meet at reasonable times, including meetings in advance of the employer's budget-making process and shall negotiate in good faith with respect to wages, hours, standards or productivity and performance, and any other terms and conditions of employment, including without limitation, in the case of teaching personnel employed by a school committee, class size and workload, but such obligation shall not compel either party to agree to a proposal or make a concession; provided, however, that in no event shall the right of any employee to run as a candidate for or to hold elective office be deemed to be within the scope of negotiation.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Massachusetts General Laws Annotated
    Part I. Administration of the Government (Ch. 1-182)
        Title XXI. Labor and Industries (Ch. 149-154)
            Chapter 150E. Labor Relations: Public Employees (Refs & Annos)

M.G.L.A. 150E § 10

§ 10. Prohibited practices

Currentness

(a) It shall be a prohibited practice for a public employer or its designated representative to:

(1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;

(2) Dominate, interfere, or assist in the formation, existence, or administration of any employee organization;

(3) Discriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization;

(4) Discharge or otherwise discriminate against an employee because he has signed or filed an affidavit, petition, or complaint or given any information or testimony under this chapter, or because he has informed, joined, or chosen to be represented by an employee organization;

(5) Refuse to bargain collectively in good faith with the exclusive representative as required in section six;

(6) Refuse to participate in good faith in the mediation, fact-finding, and arbitration procedures set forth in sections eight and nine;

(b) It shall be a prohibited practice for an employee organization or its designated agent to:

(1) Interfere, restrain, or coerce any employer or employee in the exercise of any right guaranteed under this chapter;

(2) Refuse to bargain collectively in good faith with the public employer, if it is an exclusive representative, as required in section six;

(3) Refuse to participate in good faith in the mediation, fact finding and arbitration procedures set forth in sections eight and nine.

Massachusetts General Laws Annotated
   Part I. Administration of the Government (Ch. 1-182)
     Title XXI. Labor and Industries (Ch. 149-154)
      Chapter 150E. Labor Relations: Public Employees (Refs & Annos)

## M.G.L.A. 150E § 12

## § 12. Service fee; imposition; amount; discrimination

Currentness

The commonwealth or any other employer shall require as a condition of employment during the life of a collective bargaining agreement so providing, the payment on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is later, of a service fee to the employee organization which in accordance with the provisions of this chapter, is duly recognized by the employer or designated by the commission as the exclusive bargaining agent for the unit in which such employee is employed; provided, however, that such service fee shall not be imposed unless the collective bargaining agreement requiring its payment as a condition of employment has been formally executed, pursuant to a vote of a majority of all employees in such bargaining unit present and voting.

Prior to the vote, the exclusive bargaining agent shall make reasonable efforts to notify all employees in the unit of the time and place of the meeting at which the ratification vote is to be held, or any other method which will be used to conduct the ratification vote. The amount of such service fee shall be equal to the amount required to become a member and remain a member in good standing of the exclusive bargaining agent and its affiliates to or from which membership dues or per capita fees are paid or received. No employee organization shall receive a service fee as provided herein unless it has established a procedure by which any employee so demanding may obtain a rebate of that part of said employee's service payment, if any, that represents a pro rata share of expenditures by the organization or its affiliates for:

(1) contributions to political candidates or political committees formed for a candidate or political party;

(2) publicizing of an organizational preference for a candidate for political office;

(3) efforts to enact, defeat, repeal or amend legislation unrelated to the wages, hours, standards of productivity and performance, and other terms and conditions of employment, and the welfare or the working environment of employees represented by the exclusive bargaining agent or its affiliates;

(4) contributions to charitable, religious or idealogical causes not germane to its duties as the exclusive bargaining agent;

(5) benefits which are not germane to the governance or duties as bargaining agent, of the exclusive bargaining agent or its affiliates and available only to the members of the employee organization.

It shall be a prohibited labor practice for an employee organization or its affiliates to discriminate against an employee on the basis of the employee's membership, nonmembership or agency fee status in the employee organization or its affiliates.

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.